Argued and submitted December 9, 1985, affirmed June 18, 1986

HARRIS et al,
*Respondents,*

*v.*

KISSLING,
*Appellant.*

(A8308-04873; CA A33523)

721 P2d 838

Thomas W. Brown, Portland, argued the cause for appellant. With him on the briefs was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

Margaret H. Leek Leiberan, Portland, argued the cause for respondents. With her on the brief was Kell, Alterman & Runstein, Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Warden, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Defendant challenges only the award of damages in this legal malpractice action. He admits his negligence in failing to file a medical malpractice action on behalf of plaintiffs and, for purposes of this case, he admits that the putative defendant hospital was negligent. *See Sola v. Clostermann*, 67 Or App 468, 679 P2d 317, *clarified* 68 Or App 381, 681 P2d 178, *rev den* 297 Or 547 (1984). In our review, we look at the evidence most favorable to plaintiffs.

The underlying claim arose when Mrs. Harris (hereafter plaintiff[1]) gave birth to her first child at Emanuel Hospital. Her Rh negative blood had combined with the unborn child's Rh positive blood, causing Rh antibodies to form in her blood. The hospital failed to conduct proper blood tests and to innoculate plaintiff following the birth to stop the production of antibodies. The antibodies affected the blood of her unborn child during her second pregnancy. To determine the extent of harm to the fetal blood, she had to undergo amniocentesis, which involved having a needle inserted into her uterus through the abdomen to withdraw fluid four times during her pregnancy. She was told that, if the fetus were very ill, an intrauterine transfusion might have to be done and that she might have to go to Denver for that procedure. She monitored the fetus' movements three times a day at her physician's direction. On two occasions, no movement was detected, which caused her to fear that the baby was dead. She had to rush to the hospital for tests to determine if the fetus were dead or in distress. Tests showed no fetal problems on those occasions.

Twice plaintiff had to undergo a stress test in which fluid was dripped into her arm intravenously to stimulate contractions; the tests had to be monitored carefully to avoid putting her into premature labor. The doctors observed the baby's heartbeats to determine how it would cope with the stress of contractions. During the eighth month of pregnancy, the baby stopped moving again, and the parents' efforts to get it to move failed. The baby was not dead, but the physicians felt that it was not moving as much as it should and that it

---

[1] The negligent infliction of emotional distress claim of Dr. Harris was dismissed by the trial court and is not involved in this appeal.

might be better off if born prematurely. The child was delivered by Caesarean section the next day. Very soon after its birth, the baby exhibited respiratory distress, even though plaintiff had been given steroids during the pregnancy to develop the baby's lungs in anticipation of a premature delivery. On the third day of his life, the infant required a blood transfusion, and the mother was unable to see her child for three days. The baby also developed anemia and jaundice, but he was released from the hospital after two weeks and apparently suffered no permanent damage.

Physicians testified that plaintiff will always be at very high risk in a pregnancy and that Rh problems generally get worse with each succeeding birth. At least one physician recommended that she not get pregnant again. Another testified, and defendant admits, that there is a 75 percent chance that the next baby would be at least as severely affected as the last one. That physician also explained that, if plaintiff got pregnant again, he would recommend amniocentesis every two weeks during the last four months of her term. He testified that there was a ten percent chance that intrauterine transfusions would be required every two weeks in the last two months of pregnancy. There is extensive expert testimony about health problems, their severity and their likelihood.

Defendant asserts six assignments of error. First, he argues that the judge should not have submitted plaintiff's claim for damages for negligent infliction of emotional distress, because she did not plead or prove that she suffered any physical injury or any independent basis of liability. We disagree. Plaintiff did plead that, as a result of the hospital's failure to immunize her, her body produced antibodies which attacked the blood of her unborn child. The failure to immunize resulted in an irreversible physical change in her blood, which has permanently impaired her ability to have a normal pregnancy. We point out, however, that a physical injury is not necessary to support an award of damages for emotional distress if the person seeking damages is the *direct* victim of tortious conduct. *See McEvoy v. Helikson,* 277 Or 781, 562 P2d 540 (1977); *Macca v. Gen. Telephone Co. of N.W.,* 262 Or 414, 495 P2d 1193 (1972); *Saechao v. Matsakoun,* 78 Or App 340, 344, 717 P2d 165 (1986). In this case, defendant admits that plaintiff received negligent medical care. As the direct victim of the hospital's negligence, she was entitled to plead a claim

for the emotional distress which directly flowed from that conduct.

In *Fehely v. Senders,* 170 Or 457, 474, 135 P2d 283 (1943), the Supreme Court concluded that the apprehension of a pregnant woman that her unborn child might be caused harm from the injury to her by the negligence of another was properly taken into account in estimating her damages. Defendant in this case argues that the *Fehely* reasoning does not apply, because the woman in that case suffered a physical blow to the abdomen which gave rise to her fear and that, in this case, plaintiff's claim arose from the hospital's omission to act, not from an "objective physical injury." We do not accept that distinction. The emotional distress suffered on account of the potential effects on her unborn child's health was a natural consequence of the hospital's negligence, just as the plaintiff in *Fehely* feared the consequences to her unborn child. The trial court properly submitted the emotional distress claim to the jury.

Defendant next argues that the trial court erred in denying his motion for a directed verdict, because plaintiff failed to introduce sufficient evidence to establish that the hospital's negligence deprived her and her husband of the chance of having healthy children in the future. Again, we disagree.

■■ Defendant categorizes the claim as one for an injury and argues that the evidence did not establish a reasonable medical probability of a causal connection between the hospital's negligence and plaintiffs' being deprived of the chance to have future healthy children. A plaintiff must establish a causal relationship between the conduct and the harm to support a recovery in a personal injury case, and the evidence must be sufficient to establish that the relationship is reasonably probable, not simply possible. *Feist v. Sears, Roebuck & Co.,* 267 Or 402, 407, 517 P2d 675 (1973). In this case, the medical evidence demonstrates that plaintiff is at high risk of having Rh problems in any other pregnancy. There is a 75 percent chance that each fetus would be at least as affected as the last. There is a one-in-four chance that a baby would be born prematurely. There is a ten percent chance that a fetus would need four intrauterine blood transfusions in any future pregnancy. For each pregnancy, there is a 20 percent chance

that the baby will develop major problems, such as cerebral palsy, blindness or death, and a five percent chance of fetal death.

■  If plaintiff had received immunization, the chance of an unborn child needing an intrauterine transfusion would have been one in a thousand. As a result of not being immunized, she has a 100 times greater chance than a normal woman of having to undergo the blood transfusions, and the transfusions would increase the chance of the child's suffering serious congenital conditions. Furthermore, the evidence shows that the condition is permanent. That evidence provides the basis for a jury to find a causal relationship between the hospital's negligence and plaintiffs' claim of deprivation of the chance to have future healthy children. We do not agree with defendant's assertion that plaintiffs' claim depends on their conceiving a child. The claim is for a lost opportunity, whether or not they take advantage of it.

■  Defendant's third and fourth assignments of error are closely related. He argues that the trial court erred in admitting evidence of future medical expenses and in denying a directed verdict on that damage claim. He contends under both assignments of error that the evidence as to the future medical expenses was too speculative. Both the Supreme Court and this court have held that a jury can consider future possibilities in determining damages and that evidence of the degree of likelihood should be admitted for the jury's determination. *Feist v. Sears, Roebuck & Co., supra; Henderson v. Hercules, Inc.,* 57 Or App 791, 646 P2d 658 (1982); *Pelcha v. United Amusement Co.,* 44 Or App 675, 606 P2d 1168, *rev den* 289 Or 275 (1980). That is exactly what was done in this case. The extensive medical testimony as to the likelihood of medical treatment being necessary has already been discussed. In addition to the medical testimony, both plaintiffs also testified as to the likelihood of their having more children in the future. The evidence of future medical expenses was properly allowed.

■  In *Hansen v. Bussman,* 274 Or 757, 785, 549 P2d 1265 (1976), the Supreme Court affirmed the denial of a motion for a directed verdict in a medical malpractice claim on the issue of damages. The defendant claimed that the evidence was insufficient to show "how much" retardation resulted from

the doctor's negligent failure to diagnose. After referring to the need for proving the amount of damage with as much certainty as is reasonably possible, the court quoted *Fehely v. Senders, supra,* 170 Or at 471:

> "It is even more desirable, however, that an injured person shall not be deprived of substantial compensation merely because he cannot prove with complete certainty the extent of harm he has suffered. Particularly is this true in situations * * * where the harm is of such a nature as necessarily to prevent anything approximating accuracy of proof."

In the case before us, many variables unavoidably enter into determining what future medical expenses might be necessary, and complete "accuracy of proof" cannot be expected. The evidence presented addresses the likelihood and types of medical treatments, their costs and the chance of future pregnancies. The evidence of future damages was as certain as was reasonably possible. The trial court did not err in denying a directed verdict.

■　　Defendant next argues that the trial court erred by not requiring an election between the claim for damages caused by deprivation of the chance to have future healthy children and the claim for future medical expenses. He contends that the submission of both "claims" to the jury allowed a double recovery for a single wrong. It is not at all clear that the issue in this assignment was ever raised in the trial court. In any event, the claims were presented as alternative theories of damages for different consequences of the same wrongful conduct, and they were submitted to the jury as alternatives.[2] That was proper.

　　Defendants' final assignment of error does not merit discussion.

　　Affirmed.

---

[2] Because damages for the two injuries were sought in the alternative, we need not decide whether plaintiffs could have recovered separate damages for each.