WEYMERS v KHERA

Docket No. 169280. Submitted January 10, 1995, at Detroit. Decided
April 21, 1995, at 11:20 A.M. Leave to appeal sought.

Kimberly and Jonathan Weymers brought an action in the
Oakland Circuit Court against Rheka Khera, M.D.; Gregorio V.
Ferrer, M.D.; Gregorio V. Ferrer, M.D., P.C.; and others, alleg-
ing medical malpractice in that defendants Khera and Ferrer
failed to timely diagnose and treat Kimberly Weymers for
Goodpasture's Syndrome, an illness that led to complete and
permanent kidney failure. The court, Fred M. Mester, J.,
granted summary disposition for defendants Khera and Ferrer,
ruling that there were no genuine issues of material fact and
that defendants were entitled to judgment as a matter of law.
During discovery, an expert for the plaintiffs testified that
Kimberly Weymers would have had a thirty to forty percent
chance of retaining kidney function had her illness been timely
and properly diagnosed and treated. The court also denied a
motion by the plaintiffs to amend their complaint to allege that
pulmonary damage also resulted from the failure to timely and
properly diagnose and treat the illness. The plaintiffs appealed.

The Court of Appeals *held*:

1. The trial court erred in summarily dismissing the action in
light of a question of fact created by the testimony of the
plaintiffs' expert regarding the loss of an opportunity to avoid
harm. The loss of a substantial opportunity to avoid physical
harm is distinct from the underlying injury and is a basis for a
recovery of damages, provided that the negligence of the defen-
dants, more probably than not, caused the loss of opportunity.

2. The trial court abused its discretion by denying the motion
to amend the complaint. Defendants Khera and Ferrer would
not be prejudiced by the proposed amendment because they
have notice of the claim of pulmonary injury from allegations

REFERENCES
Am Jur 2d, Physicians, Surgeons, and Other Healers § 248; Plead-
ing §§ 230, 231.
Medical malpractice: measure and elements of damages in actions
based on loss of chance. 81 ALR4th 485.

in the original complaint and the first amended complaint, as well as from the plaintiffs' mediation summary.

Reversed and remanded.

1. NEGLIGENCE — MEDICAL MALPRACTICE — LOST OPPORTUNITY.

The loss of a substantial opportunity to avoid physical harm less than death, as a result of a failure to timely and properly diagnose and treat an illness, is harm distinct from the underlying injury and is a basis for a recovery of damages in proportion to the extent of the lost opportunity, provided that the negligence of the defendant, more probably than not, caused the loss of opportunity.

2. PLEADING — AMENDMENT OF PLEADINGS — SUMMARY DISPOSITION — LACK OF GENUINE ISSUES OF MATERIAL FACT.

Where a motion for summary disposition based on the lack of genuine issues of material fact has been made, the trial court must give the parties an opportunity to amend their pleadings as provided under MCR 2.118, unless amendment would be futile (MCR 2.116[C][10]).

*Gage & Sickels, P.C.* (by *Robert B. Sickels* and *Ronda Little*), for Kimberly and Jonathan Weymers.

*David L. Rosenthal,* for Rheka Khera, M.D.

*Michael F. Kenny,* for Gregorio V. Ferrer, M.D., and Gregorio V. Ferrer, M.D., P.C.

Before: WHITE, P.J., and GRIBBS and SMOLENSKI, JJ.

SMOLENSKI, J. In this medical malpractice action, plaintiffs appeal as of right from orders granting summary disposition pursuant to MCR 2.116(C)(10), no issue of material fact, in favor of defendants Rheka Khera, M.D., Gregorio V. Ferrer, M.D., and Gregorio V. Ferrer, M.D., P.C., and denying plaintiffs' motion to amend their complaint. We reverse and remand.

I

Plaintiff Kimberly Weymers,[1] then twenty years old, was admitted to defendant St. Joseph Mercy Hospital[2] in Pontiac on October 23, 1990, where she was treated by defendant Khera and, subsequently, by defendant Ferrer. Plaintiff's kidneys failed by October 25, 1990. Plaintiff was also placed on a respirator. On October 26, 1990, plaintiff was transferred to another hospital facility where she remained on a respirator for approximately two weeks. Plaintiff was diagnosed as suffering from Goodpasture's Syndrome, a disease of the immune system that affects the lungs and kidneys. Plaintiff suffered complete and permanent kidney failure.[3]

Plaintiff brought a medical malpractice action against, among others, defendant hospital and defendants Khera and Ferrer. Plaintiff alleged that defendants Khera's and Ferrer's negligent failure to timely diagnose and treat her Goodpasture's Syndrome caused the following damages: medical expenses, lost earnings, physical and mental pain and suffering, and permanent loss of all kidney function.

During discovery, plaintiff's expert testified that if plaintiff had been timely and properly diagnosed with and treated for Goodpasture's Syndrome upon being admitted to defendant hospital she

[1] Because the claim alleged by plaintiff Jonathan Weymers, the husband of Kimberly Weymers, is solely for loss of consortium, and thus derivative of Kimberly Weymers' claims, "plaintiff" in the singular will be used hereinafter to refer to Kimberly Weymers.

[2] Only defendants Khera and Ferrer, including Ferrer's professional corporation, are parties to this appeal. Plaintiff has settled her claims with the remaining defendants.

[3] Plaintiff underwent approximately fifteen months of dialysis until she received a kidney transplant. According to plaintiff's mediation summary, the average life of a transplanted kidney is approximately seven years.

would have had a thirty to forty percent chance of retaining kidney function. Defendant hospital moved for summary disposition pursuant to MCR 2.116(C)(10) with regard to the issue of causation. Defendants Khera and Ferrer joined in defendant hospital's motion, which the trial court granted. Plaintiff subsequently moved to amend her complaint to specifically allege pulmonary damage, but the motion was denied by the trial court. Plaintiff appeals as of right.

## II

On appeal, we review the trial court's grant or denial of summary disposition de novo. *Allstate Ins Co v Elassal,* 203 Mich App 548, 552; 512 NW2d 856 (1994). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests whether there is factual support for a claim. When deciding such a motion, a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence available to it. *Allen v Keating,* 205 Mich App 560, 562; 517 NW2d 830 (1994). Summary disposition pursuant to MCR 2.116(C)(10) is proper when, except with regard to the amount of damages, there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law. *Allstate, supra.*

## III

The essential facts in this case are not in dispute. Defendants Khera and Ferrer do not dispute that plaintiff's expert would testify that plaintiff had a thirty to forty percent chance of retaining kidney function if her disease had been timely and properly diagnosed and treated. However, defen-

dants argue that they were entitled to judgment as a matter of law because plaintiff cannot establish that their conduct more likely than not was the proximate cause of her injuries, and because the doctrine of lost chance or lost opportunity as interpreted in *Falcon v Memorial Hosp,* 436 Mich 443; 462 NW2d 44 (1990), only applies in wrongful death cases. Plaintiff argues that *Falcon* applies in this case because she will suffer a premature death.

In *Falcon,* a nineteen-year-old patient suffered an unpreventable and fatal amniotic-fluid embolism after the birth of her child. The plaintiff, the administratrix of the decedent's estate, filed suit against the hospital and the attending physician, alleging that the failure to insert an intravenous line into the decedent before the onset of the embolism deprived the patient of a 37.5 percent chance of survival. *Id.* at 454-455 (LEVIN, J.), 475 (RILEY, C.J.).

A four-justice majority held that the patient's lost opportunity to survive was an actionable injury distinct from the patient's death, provided that the negligence of the defendant, more probably than not, caused the loss of opportunity. *Id.* at 461-462 (LEVIN, J.), 472-473 (BOYLE, J.). Justices LEVIN and ARCHER further stated in the lead opinion that

> [a] patient who suffers [a loss of an opportunity for a better result caused by] a failure to diagnose or a misdiagnosis has an actionable claim for damages without regard to whether death ensues. . . .
>
> The accrual of a cause of action for loss of an opportunity of achieving a better result does not, thus, depend on whether death ensues as a result. The cause of action accrues when harm and damages result from the loss of a substantial opportunity for a better result. The plaintiff has the

burden of establishing through expert testimony the difference between the course of the disease and treatment had there been a correct diagnosis, and the course of the disease and treatment as a result of failure to diagnose or misdiagnosis.

The patient, or, if death ensues, his personal representative, need not show that it was probable, measured as more than fifty percent, that the course of the disease and treatment would have been different. It is sufficient to show, more probably than not, that had there been a correct diagnosis, the patient would have had a substantial opportunity of avoiding the course of the disease and treatment that occurred. [*Id.* at 470, n 43 (LEVIN, J.).]

However, the concurring opinion of Justices BOYLE and CAVANAGH emphasized

that the Court today is called upon to decide the viability of a claim for "lost opportunity" only where the ultimate harm to the victim is death. Thus, any language in the lead opinion suggesting that a similar cause of action might lie for a lost opportunity of avoiding lesser physical harm is dicta. Whether the social and policy factors which justify compensation for a lost chance of survival would justify recovery for the loss of a chance to avoid some lesser harm is a question for another day. [*Id.* at 473 (BOYLE, J.).]

We believe that day has arrived. We hold that the loss of a substantial opportunity to avoid physical harm is harm distinct from the underlying injury for which tort law should allow recovery in proportion to the extent of the lost opportunity, provided that the negligence of the defendant, more probably than not, caused the loss of opportunity.

We believe that the arguments for allowing a cause of action for the loss of an opportunity to

survive apply equally to allowing a cause of action for the loss of an opportunity to avoid lesser physical harm. In recognizing such harm, the traditional rule that the plaintiff must prove that the defendant's negligent conduct, more likely than not, caused the harm is not contradicted. *Falcon, supra* at 462-463 (LEVIN, J.), 472-473 (BOYLE, J.); *Harris v Kissling,* 80 Or App 5; 721 P2d 838 (1986); but see *Falcon, supra* at 473-495 (RILEY, C.J., dissenting).

Allowing recovery for the loss of a substantial opportunity to avoid physical harm is an equitable approach. *DeBurkarte v Louvar,* 393 NW2d 131, 137 (Iowa, 1986). In this case, defendants undertook to protect plaintiff from the type of harm that occurred. *Falcon, supra* at 461 (LEVIN, J.). As Justice LEVIN stated in *Falcon,* an actor's negligent omission in cases like this prevents the plaintiff from being able to prove the defendant's liability, and destroys the ability to allow fate to run its course. *Id.* at 456-457, ns 20, 21. Here, assuming for the purpose of argument only that defendants should have diagnosed and treated plaintiff for Goodpasture's Syndrome upon her admission to the hospital, plaintiff might still have lost kidney function, but she would know that it was because of "fate," i.e., the natural progression of the disease, and not because of any failure by defendants.

If the lost opportunity doctrine is limited to cases only involving death, potentially flagrant examples of malpractice could go uncompensated in cases in which the same negligent failure to diagnose or treat results in a lost opportunity to avoid egregious harm, i.e., paralysis or coma. Thus, the deterrent and loss-allocation functions of tort law would be undermined if defendants could escape liability for the effects of negligent conduct that cause demonstrable losses. *DeBurkarte, supra*

at 137 (citing King, *Causation, valuation, and chance in personal injury torts involving preexisting conditions and future consequences,* 90 Yale L J 1353, 1377-1378 [1981]); but see *Falcon, supra* at 494-495 (RILEY, C.J., dissenting).

We are aware that in extending the doctrine of lost opportunity to cases not involving death

> there can be many gradations in the level of improved recovery through the use of the proper diagnosis and treatment. That is, with the proper diagnosis and treatment there can be a very likely chance of a slight improvement in the condition as well as a slim chance of a complete recovery, as well as many degrees of likelihood and levels of recovery in between. Death, on the other hand, is a quantum event. The patient either lives or dies. Recovery, to this extent, is either complete or nonexistent. [*Falcon v Memorial Hosp,* 178 Mich App 17, 23-24; 443 NW2d 431 (1989).]

However, we do not believe that the range of likelihood and levels of recovery are insurmountable problems. See *Deburkarte, supra* (allowing recovery for a loss of opportunity offers the most easily administered and consistent method for dealing with complicated cases where, but for the defendant's negligence, dealing with the imponderables of chance would not have been necessary). Cases involving a claim for loss of opportunity will inevitably include expert testimony concerning the plaintiff's chance of recovery. See *Falcon,* 436 Mich 470, n 43 (LEVIN, J.). It seems a small addition for such experts to testify regarding whether the plaintiff had a full or partial chance of recovery. For example, in this case the plaintiff's expert testified that plaintiff had a thirty to forty percent chance of retaining kidney function. Presumably that expert could also testify whether that was a

thirty to forty percent chance of a full recovery or a thirty to forty percent chance of retaining only limited kidney function and, if so, what those limits are. Defendants, of course, could provide conflicting expert testimony at trial.

Finally, we note, as did Justice LEVIN in *Falcon,* 436 Mich 469, n 41, that other courts have recognized that the lost opportunity doctrine applies in cases not involving death.[4] See, e.g., *Borgren v United States,* 723 F Supp 581 (D Kan, 1989); *James v United States,* 483 F Supp 581, 587 (ND Cal, 1980); *Harris, supra.*

Because we extend the lost opportunity doctrine to cases not involving death, we find that the testimony of plaintiff's expert that plaintiff would have had a thirty to forty percent chance of retaining kidney function had she been timely diagnosed and treated for Goodpasture's Syndrome created a question of fact.[5] Accordingly, we reverse the trial court's grant of summary disposition and remand the case to the trial court for further proceedings consistent with this opinion.

IV

Plaintiff next argues that the trial court abused its discretion in denying her motion to amend her complaint to further allege physical and mental

[4] The Legislature recently has recognized the loss of an opportunity to achieve a better medical result if the opportunity is greater than fifty percent. See MCL 600.2912a(2); MSA 27A.2912(1)(2). The statutory cause of action for loss of opportunity does not control this case because it does not apply to causes of action arising before October 1, 1993. See 1993 PA 78, § 4(1). We acknowledge the limited applicability of our holding in light of MCL 600.2912a; MSA 27A.2912(1)(2) and emphasize that we are concerned today only with the facts of this case.

[5] We are persuaded that the loss of a thirty to forty percent opportunity of retaining kidney function constitutes a loss of a substantial opportunity of avoiding physical harm. See *Falcon,* 436 Mich 470 (LEVIN, J.).

pain and suffering from the aggravation of the pulmonary pathology. We agree.[6]

Where a motion for summary disposition is grounded on MCR 2.116(C)(10), the trial court is required to give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the amendment would be futile. MCR 2.116(I)(5); *Blue Water Fabricators, Inc v News Apex Co, Inc,* 205 Mich App 295, 299; 517 NW2d 319 (1994). MCR 2.118(A)(2) provides that leave to amend shall be freely given when justice so requires. *Jackson v White Castle System, Inc,* 205 Mich App 137, 142-143; 517 NW2d 286 (1994). The rules pertaining to the amendment of pleadings are designed to facilitate amendment except when prejudice to the opposing party would result. Amendment is generally a matter of right rather than grace. *Patillo v Equitable Life Assurance Society of the United States,* 199 Mich App 450, 456; 502 NW2d 696 (1992). A motion to amend ordinarily should be granted; denial should only be for particularized reasons, such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiency by amendments previously allowed, undue prejudice to the opposing party, or futility. *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 656; 213 NW2d 134 (1973).

In this case, the trial court stated:

> The Court is satisfied that this is a 1991 case. The Defendant did not have notice that the general damage element of pain and suffering was specific to the damages arising out of pulmonary pathology. Defendants prepared for trial and the

---

[6] In light of our disposition of this issue, we decline to address plaintiff's argument that the trial court erred in ruling that an allegation in the complaint that plaintiff suffered physical pain and suffering did not encompass her temporary pain and suffering due to untreated pulmonary hemorrhage.

Defendants prepared for mediation, the Court is satisfied, due to the loss of renal function. And despite the Plaintiff's contentions, the Court's [sic] satisfied that the Motion for Amendment of the Complaint, Second Amended Complaint, should be denied, and I do so.

However, plaintiff stated in her mediation summary that her damages included the "probability that pulmonary damages would have been minimized such that mechanical ventilation and extensive respiratory therapy would not have been necessary." Plaintiff also alleged in both her original and first amended complaint that on October 23, 1990, she went to defendant Walled Lake Medical Center with a symptom, among others, of "bloody sputum with cough," that she subsequently was admitted to defendant hospital and examined by defendant Khera, and that defendant Khera failed to obtain a timely pulmonary consultation. Defendants Khera and Ferrer both testified in their depositions that Goodpasture's Syndrome affects the lungs and that they observed plaintiff having pulmonary problems. Plaintiff was subsequently placed on a respirator. These facts indicate that defendants had notice of potential pulmonary complications and thus would not have been unduly prejudiced by allowing plaintiff to amend her complaint to allege that her damages included pain and suffering from pulmonary aggravation. *Terhaar v Hoekwater,* 182 Mich App 747, 752; 452 NW2d 905 (1990). Because the amendment would not have prejudiced defendants, the mere fact that this case originated in 1991 is an insufficient reason to deny leave to amend. *Id.*

Defendants argue that *Dacon v Transue,* 441 Mich 315; 490 NW2d 369 (1992), is on point. In *Dacon,* our Supreme Court upheld the denial of the plaintiff's motion to amend her complaint. *Id.*

at 328. However, in that case the plaintiff sought to add a new theory of medical malpractice. *Id.* The plaintiff had alleged and developed the case on the theory that the defendants prescribed the wrong medicine, and not until trial did she seek to add a theory alleging that the defendants had negligently delayed treating and medicating her. *Id.* at 321-324, 328. However, *Dacon* is distinguishable. In this case, plaintiff sought the amendment before trial. Moreover, plaintiff's claim of pulmonary damage arises from her original theory that defendants negligently failed to timely diagnose or treat her Goodpasture's Syndrome. Cf. *Sherrard v Stevens,* 176 Mich App 650, 654-655; 440 NW2d 2 (1988).

Thus, although allowing the amendment might have affected the result of the trial, it would not have denied defendants a fair trial. *Fyke, supra* at 657-658. Accordingly, the trial court abused its discretion in denying plaintiff's motion to amend.[7] *Froede v Holland Ladder & Mfg Co,* 207 Mich App 127, 137; 523 NW2d 849 (1994). We reverse the trial court's denial of plaintiff's motion to amend her complaint. On remand, the plaintiff is to be allowed to amend her complaint to add an allegation of pain and suffering relating to pulmonary damage.

We do not retain jurisdiction.

Reversed and remanded.

---

[7] We note that the trial court could condition the amendment on plaintiff's reimbursing defendant for any additional expense upon a finding that inexcusable delay in requesting the amendment caused or will cause defendants additional expense that would have been unnecessary had the request for amendment been filed earlier. MCR 2.118(A)(3).