BLAIR v HUTZEL HOSPITAL

Docket No. 173709. Submitted February 6, 1996, at Detroit. Decided July 9, 1996, at 9:10 A.M. Leave to appeal sought.

Raquel Blair, for herself and as next friend of her minor child, Delano Blair, brought a medical malpractice action in the Wayne Circuit Court against Hutzel Hospital after Delano Blair was born with Down's syndrome. The plaintiff alleged that the hospital was negligent in not offering her maternal serum alpha-fetoprotein (MSAFP) screening during the pregnancy, which screening would have had a twenty-five to thirty percent chance of identifying the fetus as suffering from Down's syndrome and in thus depriving her of the opportunity to choose to terminate the pregnancy with an abortion. The hospital moved for summary disposition, arguing that the plaintiff's wrongful birth action was contrary to the public policy of the State of Michigan. The court, Edward M. Thomas, J., denied the motion. The hospital filed a second motion for summary disposition, arguing that the low ability of MSAFP screening to indicate Down's syndrome precludes the plaintiff from establishing proximate causation. The court granted the motion. The plaintiff appealed, and the hospital cross appealed the denial of the first motion for summary disposition.

The Court of Appeals held:

1. Wrongful birth, as an action brought by a parent of a child born with severe defects against a physician or other responsible party who negligently failed to inform the parent in a timely fashion of the risk that the mother would give birth to such a child, effectively precluding an informed decision regarding whether the pregnancy should have been avoided or terminated, remains a viable cause of action in this state. In denying the hospital's first motion for summary disposition, the trial court did not err in rejecting the hospital's argument that wrongful birth actions are contrary to public policy.

2. A claim for the loss of a substantial opportunity to achieve a better result may be raised in any medical malpractice action, including an action for wrongful birth. In this case, where there was expert testimony concerning a twenty-five percent to thirty percent chance that MSAFP screening would have indicated Down's

syndrome and testimony by the plaintiff that she would have undergone an abortion had she known of the risks of bearing a child with Down's syndrome, the plaintiff stated a cause of action with her claim that the hospital's failure to provide MSAFP screening deprived her of a substantial opportunity to achieve a better result. Whether the failure to provide the screening breached the standard of care and whether the screening would have provided a substantial opportunity to achieve a better result are questions of fact for the jury. The trial court erred in granting summary disposition for the hospital on the basis of proximate causation.

Reversed and remanded for trial.

O'CONNELL, P.J., dissenting, stated that there exists no reasonable justification for applying the lost opportunity doctrine in this case inasmuch as the doctrine has been applied only in situations involving death or physical harm and the doctrine has been superseded by MCL 600.2912a(2); MSA 27A.2912(1)(2). Without the benefit of the doctrine, the plaintiff cannot prove that any malpractice on the part of the defendant more likely than not caused her loss of opportunity to obtain an abortion, leaving it unnecessary to reach the issue whether the State of Michigan continues to recognize a cause of action for wrongful birth where a child is born with birth defects. The order of summary disposition based on proximate causation should be affirmed.

1. NEGLIGENCE — MEDICAL MALPRACTICE — WRONGFUL BIRTH.

Wrongful birth, as an action brought by a parent of a child born with severe defects against a physician or other responsible party who negligently failed to inform the parent in a timely fashion of the risk that the mother would give birth to such a child, effectively precluding an informed decision regarding whether the pregnancy should have been avoided or terminated, remains a viable cause of action in the State of Michigan.

2. NEGLIGENCE — MEDICAL MALPRACTICE — WRONGFUL BIRTH — LOST OPPORTUNITY.

A claim for the loss of a substantial opportunity to achieve a better result is raised in an action for wrongful birth where it is alleged that the defendant's failure to provide prenatal screening for the birth defect deprived the mother of an opportunity to consider the termination of the pregnancy by abortion.

*Gittleman, Paskel, Tashman & Walker, P.C.* (by *Clifford Paskel* and *Evan Shaw*), for the plaintiff.

*Kitch, Drutchas, Wagner & Kenney, P.C.* (by *Charles W. Fisher* and *Pamela Hobbs*), for the defendant.

Before: O'CONNELL, P.J., and REILLY and D. E. SHELTON,* JJ.

D. E. SHELTON, J. Plaintiff Raquel Blair was a twenty-two-year-old pregnant woman who was treated at defendant Hutzel Hospital. She filed this action against the hospital, alleging that the defendant negligently failed to offer her maternal serum alpha-fetoprotein (MSAFP) screening during the second trimester of her pregnancy. She alleges that the screening test would have provided a substantial opportunity to discover that her fetus had Down's syndrome and that by failing to administer the test the hospital thereby negligently deprived her of the ability to make an informed decision to terminate her pregnancy, causing her to deliver Delano Blair, a child born with Down's syndrome, on May 10, 1992.[1]

Defendant filed its first motion for summary disposition, pursuant to MCR 2.116(C)(8) and (10) , arguing that plaintiff's wrongful birth[2] action was contrary to

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

[1] This cause of action arose after the Supreme Court decision in *Falcon v Memorial Hosp*, 436 Mich 443; 462 NW2d 44 (1990), and before the April 1, 1994, legislative change to *Falcon* brought about by MCL 600.2912a(2); MSA 27A.2912(1)(2). That statute does not control, and has no relevance to, the issues in this case. The Legislature did not attempt to make its statutory rescission of *Falcon* retroactive, and plaintiff's cause of action is therefore governed by *Falcon* and its progeny.

[2] We have previously defined the meaning of a wrongful birth claim as distinguished from a wrongful life claim in *Proffitt v Bartolo*, 162 Mich App 35; 40-41; 412 NW2d 232 (1987):

> The term "wrongful birth" is a shorthand name given to actions brought by the parents of a child born with severe defects against a physician (or other responsible party) who negligently fails to

the public policy of the State of Michigan. The trial court denied the motion.

Defendant filed a second motion for summary disposition, pursuant to MCR 2.116(C)(10), arguing that plaintiff could not prove proximate causation beyond mere conjecture. Although there was evidence that there was a twenty-five percent to thirty percent chance that MSAFP would have identified the fetus as suffering from Down's syndrome, the trial court nevertheless granted defendant's motion. Plaintiff has appealed and defendant has cross appealed from the trial court rulings.

Two issues are presented for appeal. First, defendant asks this Court to hold that the tort of wrongful birth is no longer valid in Michigan. Second, defendant maintains that the doctrine that the loss of a substantial opportunity to avoid physical harm should not be applied to a wrongful birth cause of action.

## I. WRONGFUL BIRTH

This Court first expressly recognized the wrongful birth cause of action in *Eisbrenner v Stanley*, 106 Mich App 357; 308 NW2d 209 (1981), a case involving rubella-caused birth defects. In *Proffitt v Bartolo*, 162 Mich App 35, 40-41; 412 NW2d 232 (1987), this Court

---

inform them in a timely fashion of the risk that the mother will give birth to such a child, effectively precluding an informed decision as to whether the pregnancy should be avoided or terminated. A "wrongful life" claim, on the other hand, is brought on behalf of a child with birth defects who claims that, but for the negligent advice to the parents, the child would not have been born. See *Smith v Cote*, 128 NH 231; 513 A2d 341, 344 (1986); *Procanik v Cillo*, 97 NJ 339, 347-348; 478 A2d 755 (1984). Both causes of action involve claims of professional negligence.

A stipulation was filed in this case dismissing the wrongful life claim and that claim is not part of this appeal.

again held that wrongful birth is a cognizable claim in Michigan:

> The term "wrongful birth" is a shorthand name given to actions brought by the parents of a child born with severe defects against a physician (or other responsible party) who negligently fails to inform them in a timely fashion of the risk that the mother will give birth to such a child, effectively precluding an informed decision as to whether the pregnancy should be avoided or terminated. A "wrongful life" claim, on the other hand, is brought on behalf of a child with birth defects who claims that, but for the negligent advice to the parents, the child would not have been born.

In rejecting that earlier challenge to the wrongful birth concept, we noted at p 42:

> The jurisdictions considering the issue have now almost uniformly adopted the wrongful birth cause of action. See generally *James G v Caserta*, 332 SE2d 872, 875, n 6 (W Va, 1985), and Anno: *Tort liability for wrongfully causing one to be born*, 83 ALR 3d 15.

And concluded at pp 46-47:

> Against this backdrop, we conclude that the *Eisbrenner* holding with regard to wrongful birth remains the law in Michigan until changed by the Legislature or the Supreme Court. The issue of whether abortion should be allowed and all the related moral, religious, and policy arguments are not before us following the line of privacy cases culminating in *Roe v Wade*, [410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973)]. The issue is instead whether physicians have a duty to ascertain and advise parents of information necessary for the parents to exercise the options provided by *Roe*, whatever the physician personally believes. If a physician breaches the appropriate duty under the facts of a case, and it can be established that the parents would have avoided or terminated the pregnancy, the necessary causal connec-

tion is established. The parents should recover for their extraordinary medical expenses and the extraordinary costs of raising the child, as well as the emotional harm they have suffered.

As long as abortion remains an option allowed by law, the physician owes a duty to furnish patients with adequate information for them to be able to decide whether to choose that course of action. Those who would eliminate such a right of recovery must first abolish the right to have an abortion—a matter not germane to this appeal.

We have continued to recognize the wrongful birth cause of action in subsequent cases, and neither the Supreme Court nor the Legislature has acted to change our holdings. See *Rinard v Biczak*, 177 Mich App 287; 441 NW2d 441 (1989),[3] and *Rouse v Wesley*, 196 Mich App 624; 494 NW2d 7 (1992).[4]

---

[3] *Rinard* held that an action did lie for a physician's failure to diagnose a pregnancy. The Court, at pp 290-291, stated:

A cause of action can be maintained in Michigan for failure to diagnose pregnancy. In *Proffitt v Bartolo*, 162 Mich App 35, 46-47; 412 NW2d 232 (1987), lv den 430 Mich 860 (1988), this Court stated that as long as abortion remains an option allowed by law, physicians owe a duty to furnish patients with adequate information for them to be able to decide whether to choose that course of action. *Proffitt* was a wrongful birth case. The term "wrongful birth" is a shorthand name given to actions brought by the parents of a child born with severe defects against a physician, or other responsible party, who negligently fails to inform them in a timely fashion of the risk that the mother will give birth to such a child, effectively precluding an informed decision as to whether the pregnancy should be avoided or terminated. 162 Mich App 40. The instant case does not involve a wrongful birth cause of action. However, the claim asserted in this case is more analogous to that cause of action than to other causes of action such as wrongful life or wrongful pregnancy which Michigan courts have addressed. See *Proffitt, supra* at 40-41.

[4] *Rouse* arose from a pregnancy caused by an unsuccessful tubal ligation, and this Court held that the parents could not make what amounted to a "wrongful life" claim. The Court, at pp 626-627, stated:

The defendant asserts that the adoption of MCL
400.109a; MSA 16.490(19a) and the holding of the
Supreme Court in *Doe v Dep't of Social Services*, 439
Mich 650; 487 NW2d 166 (1992), indicate a contrary
public policy. That statute whose constitutionality
was upheld by the Supreme Court in *Doe*, prohibits
the use of Medicaid funds to pay for an abortion
unless the abortion was necessary to save the life of
the mother. Such a funding decision does not affect
or change the principle that abortions are lawful in
this country, or the principle that a physician owes a
duty to furnish a patient with adequate information so
the patient may decide whether to choose to have an
abortion or to be exposed to the possibility of pro-
ducing a disabled or deformed child.

The trial court properly denied summary disposi-
tion of the wrongful birth claim because that is still a
viable cause of action in this state.

### II. THE SUBSTANTIAL OPPORTUNITY RULE

In *Falcon v Memorial Hosp*, 436 Mich 443; 462
NW2d 44 (1990), the Supreme Court held that the
family of a decedent could maintain an action for
malpractice where the malpractice had denied the

---

In Michigan, causes of action are recognized for what has been
labeled wrongful birth and wrongful pregnancy, but there exists no
cause of action for wrongful life. Wrongful birth is a tort action
brought by parents of a child with a birth defect against a doctor or
other person whose negligent failure to inform the parents of the
risk of the birth defect deprived the parents of the opportunity to
make an informed decision to avoid or terminate the pregnancy.
*Rinard, supra* at 290-291; *Proffitt v Bartolo*, 162 Mich App 35, 40;
412 NW2d 232 (1987). The cause of action for wrongful birth is
available to parents to recover the extraordinary medical expenses
and costs of raising the child, as well as emotional harm. *Rinard,
supra* at 296.

decedent a substantial opportunity to survive, even when that opportunity was less than fifty percent. The Michigan Supreme Court held that the trial court erred in granting summary disposition where the plaintiff could show that the defendants' medical malpractice had deprived the plaintiff's decedent of a substantial opportunity to avoid dying as a result of cancer. The plaintiff in *Falcon* presented evidence that, absent the defendants' negligence, the plaintiff's decedent would have had a 37.5 percent chance of survival. The Court held that this was a "substantial" opportunity and that the plaintiff could maintain an action against the defendants for their failure to preserve the decedent's opportunity to live.

Defendant here maintains that this substantial opportunity rule should be limited to wrongful death actions. There is no merit to that position. Although *Falcon* involved a claim of wrongful death, Justice LEVIN stated in a footnote that

> [t]he accrual of a cause of action for loss of an opportunity of achieving a better result does not . . . depend on whether death ensues as a result. The cause of action accrues when harm and damages result from the loss of a substantial opportunity for a better result. The plaintiff has the burden of establishing through expert testimony the difference between the course of the disease and treatment had there been a correct diagnosis, and the course of the disease and treatment as a result of failure to diagnose or misdiagnosis. [*Id.* at 470, n 43.]

Moreover, this Court has very recently held that the substantial opportunity rule applies to all medical malpractice actions. In *Weymers v Khera*, 210 Mich App 231; 533 NW2d 334 (1995), lv gtd 451 Mich 898 (1996), the plaintiff claimed that her physician's negli-

gence deprived her of a thirty percent to forty percent opportunity to save her kidney function. Judge SMOLENSKI eloquently stated at pp 236-237:

> We hold that the loss of a substantial opportunity to avoid physical harm is harm distinct from the underlying injury for which tort law should allow recovery in proportion to the extent of the lost opportunity, provided that the negligence of the defendant, more probably than not, caused the loss of opportunity.
>
> We believe that the arguments for allowing a cause of action for the loss of an opportunity to survive apply equally to allowing a cause of action for the loss of an opportunity to avoid lesser physical harm. In recognizing such harm, the traditional rule that the plaintiff must prove that the defendant's negligent conduct, more likely than not, caused the harm is not contradicted. *Falcon*, supra at 462-463 (LEVIN, J.), 472-473 (BOYLE, J.); *Harris v Kissling*, 80 Or App 5; 721 P2d 838 (1986); but see *Falcon, supra* at 473-495 (RILEY, C.J., dissenting).
>
> Allowing recovery for the loss of a substantial opportunity to avoid physical harm is an equitable approach. *DeBurkarte v Louvar*, 393 NW2d 131, 137 (Iowa, 1986). In this case, defendants undertook to protect plaintiff from the type of harm that occurred. *Falcon, supra* at 461 (LEVIN, J.). As Justice LEVIN stated in *Falcon*, an actor's negligent omission in cases like this prevents the plaintiff from being able to prove the defendant's liability, and destroys the ability to allow fate to run its course. Id. at 456-457, ns 20, 21. Here, assuming for the purpose of argument only that defendants should have diagnosed and treated plaintiff for Goodpasture's Syndrome upon her admission to the hospital, plaintiff might still have lost kidney function, but she would know that it was because of "fate," i.e., the natural progression of the disease, and not because of any failure by defendants.
>
> If the lost opportunity doctrine is limited to cases only involving death, potentially flagrant examples of malpractice could go uncompensated in cases in which the same negligent failure to diagnose or treat results in a lost oppor-

tunity to avoid egregious harm, i.e., paralysis or coma. Thus, the deterrent and loss-allocation functions of tort law would be undermined if defendants could escape liability for the effects of negligent conduct that cause demonstrable losses. *DeBurkarte, supra* at 137 (citing King, *Causation, valuation, and chance in personal injury torts involving preexisting conditions and future consequences,* 90 Yale L J 1353, 1377-1378 [1981]); but see *Falcon, supra* at 494-495 (RILEY, C.J., dissenting).

Defendant nevertheless contends that the wrongful birth tort should somehow be carved out as an exception to the substantial opportunity rule. The only authority cited for this unusual proposition is the 1989 California case of *Simmons v West Covina Medical Clinic,* 212 Cal App 3d 696; 260 Cal Rptr 772 (1989). The rationale of *Simmons* is inapplicable in this state, however, because California is one of the minority of states that does not recognize the substantial opportunity rule in any type of tort. See *Dumas v Coone,* 235 Cal App 3d 1593, 1600-1601; 1 Cal Rptr 2d 584 (1991).

The substantial opportunity rule is the law of Michigan that applies to this case. A patient goes to a physician in order to improve opportunities of avoiding, ameliorating, or reducing physical harm, as well as pain and suffering. A pregnant patient goes to a physician in order to obtain the best possible care during her pregnancy and the best possible outcome of the pregnancy. We have consistently held, as we did in *Proffitt,* that a physician has a duty to ensure that a woman makes informed decisions regarding her procreative options, including the option of abortion. The failure to so inform a woman is a breach of that duty. The element of causation is satisfied if a plaintiff can show that the defendant's negligence in providing that

information deprived her of a substantial opportunity to learn of the risks of bearing a child with birth defects and that had she been provided with such information, she would have obtained an abortion.

In *Falcon*, a 37.5 percent chance of survival was held to be substantial as a matter of law. In *Weymers*, a thirty percent to forty percent chance was held to be substantial. In this case, plaintiff's expert testified that there was a twenty-five percent to thirty percent chance that MSAFP screening would have identified plaintiff's fetus as being affected by Down's syndrome. Plaintiff testified that she would have undergone an abortion had she been provided with the information. Under these circumstances, we hold that plaintiff's claim that she was deprived of a substantial opportunity to learn of the defective condition of her fetus when her physician negligently failed to provide MSAFP screening stated a cause of action. Further, such evidence created a question of fact. The defendant denies that the failure to provide the screening was a breach of the standard of care and denies that such screening would have provided a substantial opportunity to achieve a better result. We hold that both of those issues are questions of fact for a jury to resolve.

The trial court's granting of defendant's second motion for summary disposition was in error.

The grant of summary disposition for defendant is reversed, and this matter is remanded for trial on plaintiff's wrongful birth complaint.

REILLY, J. concurred.

O'CONNELL, P.J. (*dissenting*). The majority concludes that the "lost opportunity to survive" rationale,

as enunciated in *Falcon v Memorial Hosp*, 436 Mich
443; 462 NW2d 44 (1990), and repudiated in MCL
600.2912a(2); MSA 27A.2912(1)(2), should be
extended to include the "lost opportunity to have an
abortion." I disagree. No appellate court in this nation
has extended the *Falcon* rationale to the "lost oppor-
tunity to have an abortion."

There exists no reasonable justification for apply-
ing the lost opportunity doctrine to the present case
where, first, that doctrine has been applied only to
situations involving death or physical harm, and, sec-
ond, where the doctrine as a whole has been
expressly superseded by statute. Because I do not
believe that the lost opportunity doctrine should
apply to the present case, I would find that plaintiff
failed to meet her burden of proving that any mal-
practice on the part of defendant "more likely than
not" caused her loss of opportunity to obtain an abor-
tion. Accordingly, I would affirm the order granting
summary disposition of the issue of proximate causa-
tion. In light of this, I would find it unnecessary to
reach the issue whether Michigan continues to recog-
nize a cause of action for wrongful birth where a
child is born with birth defects.

I

On May 10, 1992, plaintiff gave birth to a son suffer-
ing from Down's syndrome (trisomy 21). On Decem-
ber 17, 1992, she filed suit against defendant, contend-
ing that defendant had been both directly and vicari-
ously liable for the failure of her physician to perform
a particular prenatal test that might have detected
that her son would suffer from the chromosomal dis-
order. Had the test been performed and had the test

accurately disclosed the affliction, she avers that she
would have had an abortion. Because the alleged mal-
practice of defendant foreclosed her opportunity to
terminate the pregnancy, she sought damages to com-
pensate her for the incremental cost of raising a
handicapped child and for *her* pain and suffering.

As relevant to the instant appeal, defendant moved
for summary disposition, alleging that plaintiff had
failed to present legally sufficient evidence with
respect to proximate causation. The prenatal test in
issue, maternal serum alpha-fetoprotein (MSAFP)
screening, is an indirect method of detecting, among
other things, the possibility that the fetus will suffer
from Down's syndrome. While alpha-fetoprotein
occurs normally in pregnant women, an abnormally
low concentration of the serum during the second tri-
mester of pregnancy is associated with Down's syn-
drome. Expert testimony on deposition established
that MSAFP screening will detect Down's syndrome in
approximately twenty-five percent to thirty percent of
the cases in which the syndrome will ultimately be
manifested. Defendant argued, in short, that, because
the MSAFP screening failed to detect Down's syndrome
more than fifty percent of the time, the chance of
detection was legally insufficient to have caused
plaintiff's lost opportunity to obtain an abortion. The
circuit court granted defendant's motion, and plaintiff
now appeals as of right.

II

In *Falcon, supra,* p 453, our Supreme Court ruled
that a patient deprived of an opportunity to survive
because of a physician's malpractice could recover
*pro rata* in tort from that physician, even where the

opportunity lost afforded less than a fifty percent chance of "achieving a better result," i.e., survival. [1] In that case, a physician failed to insert an intravenous line in a situation in which it was alleged that the standard of care called for such insertion. Had the physician inserted the line, the plaintiff's decedent would have had a 37.5 percent chance of surviving. Because the physician did not, the plaintiff's decedent was deprived of this chance of survival, and died. The Court held that this deprivation of a substantial opportunity to survive was actionable despite the fact that the decedent would have had less than a fifty percent chance of "a better result" had the procedure been performed.

The *Falcon* decision was, however, both a limited and short-lived holding. As clarified in Justice BOYLE's concurrence, p 473, the *Falcon* Court was

> called upon to decide the viability of a claim for "lost opportunity" only where the ultimate harm to the victim is death. Thus any language in the lead opinion suggesting that a similar cause of action might lie for a lost opportunity of avoiding lesser physical harm is dicta. Whether the social and policy factors which justify compensation for a lost chance of survival would justify recovery for the loss of a chance to avoid some lesser harm is a question for another day.

---

[1] Our Legislature has since rejected the reasoning set forth in *Falcon*. In the wake of *Falcon*, MCL 600.2912a; MSA 27A.2912(1) was amended to provide that "[i]n an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than fifty percent." *Falcon* is, thus, applicable only to causes of action arising before the effective date of the amendment of MCL 600.2912a; MSA 27A.2912(1). The present case involves such an action.

Our Legislature immediately rejected the substantial opportunity doctrine, and the doctrine and the reasoning of *Falcon* were soon superseded by statute. MCL 600.2912a(2); MSA 27A.2912(1)(2). Thus, the substantial opportunity doctrine was the law in Michigan only briefly. Nevertheless, in *Weymers v Khera*, 210 Mich App 231, 236; 533 NW2d 334 (1995), lv gtd 451 Mich 898 (1996), this Court extended the rule of law established in *Falcon* (in the limited number of still-viable causes of action arising before the effective date of the legislation nullifying *Falcon*) to situations involving physical harm. This Court stated:

> We hold that the loss of a substantial opportunity to avoid physical harm is harm distinct from the underlying injury for which tort law should allow recovery in proportion to the extent of the lost opportunity, provided that the negligence of the defendant, more probably than not, caused the loss of opportunity. [210 Mich App 236.]

The *Falcon* holding was thereby extended beyond situations involving the loss of a substantial opportunity for *survival* to "the loss of a substantial opportunity to avoid *physical harm*."[2] This was done despite the fact that the *Falcon* decision declared itself to be a limited holding and the fact that the Legislature had repudiated the substantial opportunity doctrine.

III

Plaintiff asks that this Court further extend the reasoning of *Falcon* to situations involving the loss of an

---

[2] The legislation nullifying the *Falcon* holding also nullified the *Weymers* holding, except in those causes of action arising before the effective date of the legislation.

opportunity to obtain an abortion. I would decline to do so.

At issue in the present case is proximate cause.[3] The element of proximate cause encompasses two distinct aspects: cause in fact and so-called "legal cause." *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994). In general, to establish cause in fact, a plaintiff must demonstrate that "it is more likely than not that the conduct of the defendant was a cause in fact of the [injury]." *Id.*, p 165, quoting *Mulholland v DEC Int'l Corp*, 432 Mich 395, 416; 443 NW2d 340 (1989), in turn quoting Prosser & Keeton, Torts (5th ed), § 41, p 269. The phrase "more likely than not" is a precise term denoting a probability of greater than fifty percent. *Falcon, supra*, p 450.

Here, plaintiff has failed to present evidence that defendant's failure to perform MSAFP screening for plaintiff "more likely than not" deprived her of the opportunity to have an abortion. Plaintiff's expert stated that, at best, the procedure had roughly a thirty percent chance of detecting that plaintiff's son would suffer from Down's syndrome. The chance that the test would *not* have detected Down's syndrome was greater than two in three. Therefore, because this probability was less than fifty percent, plaintiff was unable to demonstrate that the lack of MSAFP screening "more likely than not" deprived her of the opportunity to have an abortion.

---

[3] We assume arguendo that defendant was under a duty to provide MSAFP screening and that defendant breached that duty by failing to offer the test. We are aware that at the time this cause of action arose there existed divergent views concerning the applicable standard of care.

However, to demonstrate proximate cause in the present case, plaintiff relies on the moribund exception to the general rule that a defendant's actions must be more likely than not the cause of a plaintiff's alleged injuries, that adopted in *Falcon*. *Falcon* is applicable to the present cause of action, despite the fact that that decision is no longer good law, because the action arose before the enactment of MCL 600.2912a(2); MSA 27A.2912(1)(2). Plaintiff argues that her situation is indistinguishable from that in *Falcon*. As in *Falcon*, the instant defendant failed to take a certain action. In *Falcon*, the victim of this inactivity was deprived of the opportunity to survive. Here, the victim was deprived of an opportunity to obtain an abortion. Because recovery was allowed in *Falcon*, it is contended that recovery should be allowed in the present case.

Thus, we must determine whether the rule of law established in *Falcon*—that recovery may be predicated on the "loss of a substantial opportunity" for survival, as extended to physical injury by *Weymers*, even where the opportunity lost is less than fifty percent—applies to the loss of the opportunity to obtain an abortion. As made clear in both *Falcon*, *supra*, pp 458-461, and *Weymers*, *supra*, pp 236-239, this is a question of policy; it invokes not the cause-in-fact aspect of proximate cause, but the "legal cause" component. Therefore, we must determine whether the policy justifications advanced in *Falcon* and *Weymers* apply with equal force in the present context.

IV

While plaintiff does not address the public policy aspects of extending *Falcon* to the present case,

defendant devotes the bulk of its brief on appeal to the subject. Defendant argues that "Michigan public policy favors life over abortion." Defendant is correct.

The Supreme Court of the United States has declared that there is a constitutional right to privacy. *Roe v Wade*, 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973). This right to privacy "protects the woman from unduly burdensome interference with her freedom to decide whether to terminate her pregnancy." *Maher v Roe*, 432 US 464, 473-474; 97 S Ct 2376; 53 L Ed 2d 484 (1977). However, this right to privacy "implies no limitation on the authority of a State to make a value judgment favoring childbirth over abortion." *Id.*, p 474. For example, "[f]or public policy reasons, the state may choose to eliminate benefits that it previously offered," such as the public funding of abortion. *Doe v Dep't of Social Services*, 439 Mich 650, 678; 487 NW2d 166 (1992). Michigan refuses to publicly fund an abortion unless the abortion is necessary to save the life of the mother. *Id.*; MCL 400.109a; MSA 16.490(19a). Our state's public policy is manifested in numerous other ways. See, e.g., MCL 333.17014(f) and (h); MSA 14.15(17014)(f) and (h). "[E]ven the *Roe* Court acknowledged that the state has an 'important and legitimate interest . . . in protecting the potentiality of human life.' " *Doe, supra*, p 666, quoting *Roe v Wade*, p 162.

However, defendant's argument is not wholly transferable to the present context. While the reasoning of *Falcon* was somewhat elusive in that it failed to succinctly summarize the public policy upon which it was based and failed to address competing policy considerations, the gist of its holding appears in section VI, p 461. *Falcon* involved a pregnant woman who

gave birth to a healthy, normal baby, but immediately
after delivery suffered complications that led to her
death. Her physician failed to perform a procedure
that had a 37.5 percent chance to save her life. The
*Falcon* Court concluded that public policy favored
recovery in that situation because

> [w]omen gave birth to children long before there were phy-
> sicians or hospitals or even midwives. A woman who
> engages the services of a physician and enters a hospital to
> have a child does so to reduce pain and suffering and to
> increase the likelihood of her surviving and the child surviv-
> ing childbirth in a good state of health even though the like-
> lihood of the woman and child not surviving in good health
> without such services is far less than fifty percent. That is
> why women go to physicians. That is what physicians
> undertake to do. That is what they are paid for. They are,
> and should be, subject to liability if they fail to measure up
> to the standard of care. [*Id.*, p 461.]

The Court concluded that recovery should be
allowed, despite the fact that only a 37.5 percent
chance existed that the decedent would have survived
had malpractice not occurred. *Id.*, p 470. Thus, the
*Falcon* Court gave its approval to a lowered threshold
of proof of causation in cases involving the loss of
the opportunity to survive.

From this passage, one may deduce that the policy
considerations advanced by the *Falcon* decision con-
cerned a patient's reliance on a physician to under-
take measures meant to prevent death or physical
harm, or at least to lessen the possibility that these
exigencies would come to pass. Even where one has
less than a fifty percent chance of suffering death, in
*Falcon*, or physical harm, in *Weymers*, one engages
the services of a physician to lessen that chance still

further. A physician, it was held, should not be immunized from liability merely because one seeking treatment had, upon arrival, less than a fifty percent chance of suffering death, *Falcon, supra*, or physical harm, *Weymers, supra*, where the physician through malpractice fails to lessen the possibility of the adverse consequence.

Turning, then, to the present case, I fail to see how the policy considerations articulated in *Falcon* and extended in *Weymers* would be furthered by allowing plaintiff to proceed in the absence of evidence that defendant's inaction "more likely than not" deprived her of the opportunity to obtain an abortion. First, and most significantly, plaintiff did not suffer death or physical injury; she "suffered" the birth of a healthy child with Down's syndrome. The alleged injury before this Court differs in kind from those considered in *Falcon* and *Weymers*. To apply the reasoning of those cases to the present context would constitute not an extension, but a wholesale grafting, of this reasoning to a distinct area of tort law. Second, as stated by the United States Supreme Court in *Harris v McRae*, 448 US 297, 325; 100 S Ct 2671; 65 L Ed 2d 784 (1980), "[a]bortion is inherently different from other medical procedures, because no other procedure involves the purposeful termination of a potential life."

Therefore, I would conclude that the reasoning of *Falcon* and *Weymers* does not apply where a plaintiff has not suffered death or physical injury. Because plaintiff suffered neither of these, the "lost opportunity" doctrine does not apply. Thus, plaintiff had the burden of presenting evidence that defendant's alleged breach "more likely than not" caused her

alleged injuries, that defendant's inaction was more than fifty percent the cause of her inability to obtain an abortion. She has presented no such evidence. Therefore, summary disposition was appropriate.

V

On cross appeal, defendant contends that the circuit court erred in denying defendant's prior motion for summary disposition pursuant to MCR 2.116(C)(8). In that motion, defendant argued that Michigan recognizes no cause of action for "wrongful birth" where the alternative would have been abortion. The term "wrongful birth" "is a shorthand name given to actions brought by the parents of a child born with severe defects against a physician (or other responsible party) who negligently fails to inform them in a timely fashion of the risk that the mother will give birth to such a child, effectively precluding an informed decision as to whether the pregnancy should be avoided or terminated." *Proffitt v Bartolo*, 162 Mich App 35, 40; 412 NW2d 232 (1987). Defendant submits that given the absence of binding precedent on the subject and Michigan's public policy disfavoring abortion, the circuit court should have granted its motion for summary disposition.

There are persuasive arguments to be made both in favor of and in opposition to defendant's position. In defendant's favor, this Court has recognized that "all human life is presumptively valuable." *Rouse v Wesley*, 196 Mich App 624, 631; 494 NW2d 7 (1992). We are aware of no court decision applying *Falcon*-type reasoning in the present context. See, e.g., *Simmons v West Covina Medical Clinic*, 212 Cal App 3d 696; 260 Cal Rptr 772 (1989). Additionally, we have stated

that "the courts of this state should not be the forum of the unbecoming spectacle of parents, in an effort to maximize recovery, presenting evidence of how little affection they have for their children or disparaging the value of their children." *Rouse, supra,* p 631. One would be hard pressed to conceive of a situation more unbecoming than a parent testifying under oath that had the parent been given more information, the parent would have aborted the child underlying the suit. However, working to defendant's detriment, it would appear inconsistent to allow some recovery for malpractice resulting in the birth of a healthy, normal child, see *Rinard v Biczak,* 177 Mich App 287; 441 NW2d 441 (1989), while disallowing recovery for the birth of a healthy, abnormal child, or an unhealthy, abnormal child.

However, I would defer deciding this issue because it is not necessary to the resolution of this case. Regardless of whether such a cause of action exists, the outcome of the present appeal would be the same.

I would affirm.