BESSIE BASSETT *v.* STEVEN GLOCK, M.D.

[No. 2-176A1. Filed October 13, 1977.]

*James P. Dunn*, of Fort Wayne, for appellant.

*John M. Clifton, Jr., Barrett, Barrett & McNagny*, of Fort Wayne, for appellee.

SULLIVAN, P.J.—Bassett appeals from a summary judgment granted in favor of defendant, Steven Glock, M.D. Bassett's malpractice complaint asserted negligence for failure to properly diagnose and treat a condition of her back. The trial court heard oral argument on Glock's motion for summary judgment and entered judgment for Glock.

Bassett contends that there was a genuine issue of material fact. We are not persuaded by Bassett's argument, and we affirm the trial court's judgment.

As drawn from the pleadings, affidavits, depositions and answers to interrogatories, the operative facts are undisputed. In November, 1971, while employed as a nurse's aid, Bassett experienced pain in her back as a result of helping a patient out of bed. Approximately three months later in March, 1972, Bassett

initally consulted Glock, an orthopedic specialist, with reference to her back condition. Glock stated that various examinations and x-rays revealed no objective basis for Bassett's complaints of pain. However, Glock placed her on a program of conservative care consisting of the application of heat, exercises, and the use of a back brace. In September, 1972, Bassett was admitted to Parkview Memorial Hospital for extensive testing and examination. The tests were reviewed by Glock as well as by a neurosurgeon, a radiologist, and a neurologist. None of these found any defect in the bone structure of the back nor any other objective basis for Bassett's complaint. After her discharge from the hospital, Bassett conferred with the neurosurgeon, Dr. Hastings, who informed her that a spinal fusion was an alternative solution to her back problem. However, he warned Bassett that the procedure involved risk, possibly a year of total incapacitation, some permanent impairment and that no guarantee could be offered that it would eliminate the pain. In his deposition, Hastings stated that the conservative care prescribed by Glock was accepted and proper treatment for Bassett's condition.

On two subsequent visits to Glock, Bassett was advised that she could be referred to the Mayo Clinic. She stated that she would do so when she had saved enough money.

Subsequently, on April 30, 1973, Bassett was involved in an automobile accident, and while under treatment at a Fort Wayne, Indiana, hospital, she consulted with Dr. Kimbrough, an orthopedic surgeon. Kimbrough took x-rays of Bassett's back and discovered that Bassett had a degenerative lumbosacral disc disease with an apparent grade one spondylolisthesis without spondylosis.[1] This diagnosis corresponded with similar findings made by physicians at the Mayo Clinic April 19-20, 1973.

In May, 1973, Kimbrough performed a spinal fusion on Bassett at her request. Kimbrough, however, stated in his deposition that the surgery was an elective procedure and that he found no

---

1. Spondylolisthesis is a slippage of the vertebrae which usually, but not always, is associated with spondylosis. Spondylosis is a defect, crack or chip in the pars interarticularis (the posterior or arch of the spinal vertebra) which allows the bony vertebrae to slide forward. See Stedman's Medical Dictionary (4th ed. 1076).

abnormality or defect of the pars interarticularis, i.e., spondylosis; therefore he too would have followed the program of conservative care instituted by Glock in view of the lack of any objective finding as of September, 1972. Like Hastings, he concurred that the surgical procedure presented some risks — incapacitation for a year or longer and some permanent impairment with no guarantee of eliminating the back pain. His statement indicated not only that Glock's treatment was an accepted one under the circumstances but that it was also possible that Bassett's condition may have worsened in the time since Glock had seen her thereby enabling Kimbrough to discover the vertebrae slippage. It was Kimbrough's opinion that appropriate treatment was administered by Glock since both the conservative care and the spinal fusion are administered by medical specialists to accomplish immobility of the problem vertebrae — the operation being permanent in nature but having attendant risks, a back brace requiring constant use to assimilate comparable immobility in the bony structure.

Thus, the matter for resolution by the trial court was whether Bassett did or did not present a genuine issue of material fact regarding the propriety of the medical judgment and care, i.e., diagnosis and treatment, exercised by Glock as a medical specialist in orthopedic surgery.

We acknowledge that a negligence case is rarely an appropriate case for disposal by summary judgment, especially when the critical question for resolution is whether the defendant exercised the degree of care due under the factual circumstances. *Doe v. Barnett* (1969), 145 Ind. App. 542, 251 N.E.2d 688, 695. This issue, like causation, is generally a question for the trier of fact, and not answerable as a matter of law. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701. *See* also *St. Joseph Bank & Trust Co. v. Wackenhut Corp.* (1976), 170 Ind. App. 288, 352 N.E.2d 842, 845; *Letson v. Lowmaster* (1976), 168 Ind. App. 159, 341 N.E.2d 785, 787.

The purpose of the summary judgment procedure is to terminate litigation of a cause about which there can be no factual

dispute and which may be determined as a matter of law. We have insisted on caution in the application of the procedure. The right of parties to have a fair determination of genuine issues within a valid cause should not be thwarted through a procedure which exists to eliminate undue burdens upon litigants and the exposé of spurious lawsuits. Mere improbability of recovery by the plaintiff does not justify summary judgment for a defendant. *Central Realty Inc. v. Hillman's Equipment, Inc.* (1969), 253 Ind. 48, 246 N.E.2d 383, 388; *McNabb v. Mason* (1970), 148 Ind. App. 233, 264 N.E.2d 623, 626.

Therefore, the burden is on the proponent of a summary judgment to demonstrate the absence of any genuine issue as to a material fact. *Doe v. Barnett, supra* at 694, 695; *see* also *Brandon v. State* (1976), 264 Ind. 177, 340 N.E.2d 756, 758. All doubts and fair inferences are to be resolved in favor of the opponent. *Doe v. Barnett, supra* at 694, 695; and if resolution hinges upon a state of mind, credibility of witnesses, or weight of testimony, summary judgment should be denied. *Musgrave v. Madonna* (1976), 168 Ind. App. 145, 341 N.E.2d 789, 791; *Mayhew v. Deister* (1969), 144 Ind. App. 111, 244 N.E.2d 448, 452. The sole question before us is whether a legitimate and material factual controversy was shown to exist within the substantive and procedural posture of this case.

To facilitate the parties in their efforts to show the absence or presence of material issues, Ind. Rules of Procedure, Trial Rule 56(E) permits the submission of affidavits, depositions, interrogatories and testimony. However, this provision is not intended to effect abbreviated or summary trial. *Renn v. Davidson's Southport Lumber Co., Inc.* (1973), 157 Ind. App. 446, 300 N.E.2d 682, 687.[2]

Submitted to the trial court were the depositions of the physicians, Glock, Kimbrough and Bridges, as well as that of Bassett. In examining those depositions, we find that if Glock's exercise of

---

2. Because a summary judgment is not a trial incorporating decisions as to conflicting facts, credibility of witnesses or the weight of evidence, findings of facts by the court are inappropriate. *See Sekerez v. Lake County Board of Commissioners* (1976), 171 Ind. App. 463, 358 N.E.2d 140, 144.

the requisite degree of care was subject to dispute, Bassett failed to reveal it. There was general concurrence among the physicians that Glock's treatment of Bassett was acceptable standard treatment administered by like specialists. Some inferential doubt may have been cast upon Glock's diagnosis in that he may not have recognized the spondylolisthesis which Kimbrough (and apparently also the Mayo Clinic) later discovered. Kimbrough stated however that it was a reasonable likelihood that Bassett's condition worsened over time so that he was able to diagnose the malady more readily.

Granting Bassett the most favorable inference, i.e., that the condition, spondylolisthesis, existed prior to Kimbrough's discovery, the expert opinion was still to the effect that the conservative care recommended by Glock was entirely appropriate treatment for spondylolisthesis and that a spinal fusion was merely an alternative treatment offset by certain risks.

The only indication to the contrary was Bassett's allegation that conservative treatment was inappropriate and resulted in her continued pain and suffering and that spinal fusion was the appropriate treatment and ultimately proved to alleviate greatly her pain. Since no medical expert or specialist to stated and since Bassett contends that the reasonableness of Glock's conduct could be placed into issue without controverting expert testimony, we must consider the evidentiary necessity for, and the determinative character of, expert opinion in relation to the standard of care required of a medical specialist.

The legal standard which fixes a physician's duty to his patient has long been established in Indiana. A physician does not undertake absolutely to cure but is bound to possess and exercise the average degree of skill possessed and exercised by members of the profession practicing in similar localities. *Gramm v. Boener* (1877), 56 Ind. 497; *see Worster v. Caylor* (1953), 231 Ind. 625, 110 N.E.2d 337.[3]

---

3. The "locality" rule, particularly as phrased in terms of the "same locality", has been subjected to recent criticism. *See Hirschberg v. New York* (N.Y. Ct. of Claims 8-24-77) 46 U.S.L.W. 2134; 23 Vand. L.R. 729.

The degree of skill and care required of the physician or surgeon who is employed because he is a specialist, is that degree of skill and knowledge which is ordinarily possessed by physicians and surgeons who devote special attention to the ailment, its diagnosis and treatment, in similar localities. *Worster v. Caylor, supra* 110 N.E.2d at 339; *Baker v. Hancock* (1902), 29 Ind. App. 456, 64 N.E. 38.

Indiana courts have held that this question may not be resolved without resort to expert testimony. Similarly, expert opinion is indispensable to an evaluation of a particular defendant's conduct within the framework of the duty imposed by law.

However, lay testimony has not been totally foreclosed. In *Longfellow v. Vernon* (1914), 57 Ind. App. 611, 629, 105 N.E. 178, 184-185 the court said:

"There are questions requiring scientific or expert knowledge which can only be answered by those possessing the requisite skill and knowledge to give their answers probative value, and persons not so qualified are not therefore, competent witnesses as to questions depending wholly on such scientific or expert knowledge. 5 Encyc. Evidence., p. 517, *et seq.; Isenhour v. State*, 157 Ind. 517-528, 62 N.E. 40, 87 Am. St. Rep. 228.

"Whether the treatment of any particular injury or case was proper, or whether a surgical operation was skillfully performed, or whether a particular disease resulted from alleged negligent treatment, and like questions of science, must of necessity depend upon the testimony of physicians and surgeons learned in such matters, but such questions are not identical with the ultimate issue to be decided by the jury. *Warton v. Warner*, 75 Wash. 470, 135 Pac. 235-237; 9 Ency. Evidence, pp. 840-846; *Hoener v. Koch*, 84 Ill. 408.

"*The foregoing rule does not have the effect of limiting or prescribing the testimony of nonexpert witnesses as to particular facts within their knowledge, which may bear upon questions depending for their ultimate solution upon scientific knowledge. In a malpractice suit, facts relating to the treatment and the condition of the patient may be stated by such witness, though they may be incompetent to give an opinion as*

*to the value or effect of such facts from a medical or surgical point of view. Hitchcock v. Burgett, 38 Mich. 501-505; Piles v. Hughes, 10 Iowa 579-580."* (Emphasis supplied.)

The *Longfellow* court went on to say that "[t]he facts in some cases may be of such a character as to enable the jury to find negligence in the treatment of a patient without the aid of expert testimony". 105 N.E. at 185.

More recently, in *Cochrane v. Lovett* (1975), 166 Ind. App. 684, 337 N.E.2d 565, 570, we made the following distinction:

"In *Adkins* the court said:

'. . . The general rule in malpractice cases, is that, in determining whether the physician and surgeon has exercised ordinary skill and care in the diagnosis of the disease and treatment of the patient and the result obtained thereby, the jury must be guided *solely* by the testimony of physicians and surgeons because of the scientific nature and character of the questions usually involved in such cases, and the jury cannot set up standards of skill and care of its own.' (Emphasis added) [citations omitted].

"We can see no basis for the jury being misled into believing that only physicians and surgeons could testify as to what Lovett did or did not do, as opposed to the necessity of physicians and surgeons testifying exclusively about the standard of skill and care required of doctors in the locality, i.e., whether Lovett 'used' the skill and learning required."

Whether Glock used the skill and learning required of his professional specialty is precisely the issue in the present case, as opposed to any dispute concerning what he did or did not do. Whether the treatment prescribed by Glock exhibited want of the reasonable skill ordinarily possessed by like specialists was the essential question and was a question requiring expert assessment. Therefore, the trial court judge properly concluded that since the opinions of the medical experts were not in conflict, there were no material issues for appropriate resolution by a jury. *Cf. Shirey v. Schlemmer* (1967), 249 Ind. 1, 230 N.E.2d 534.

Although Bassett was under no obligation to present evidence sufficient to establish her claim, she was obliged to put forth

sufficient basis upon which the court might find existence of a genuine triable issue. *Pan American Airways, Inc. v. Local Readers Service, Inc.* (1968), 143 Ind. App. 370, 240 N.E.2d 552, 556.

In this respect, we again emphasize that the substantive law requires expert opinion as to the existence and scope of the standard of care which is imposed upon medical specialists and as to whether particular acts or omissions measure up to that standard of care.

This is not to say that the ultimate issue for resolution, i.e., negligence, rests within the exclusive domain of expert witnesses. It is only to say that before the trier of fact may confront the factual question the issue must be presented and placed in controversy by reference to expert opinion.

In light of the uncontroverted medical opinion concerning the reasonablenss of Glock's choice of treatment, Bassett failed to present sufficient basis upon which we might find that the court committed reversible error.

Judgment affirmed.

Hoffman, J., (participating by designation) and

Buchanan, J., concur.

NOTE — Reported at 368 N.E.2d 18.