IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
AUGUST 20, 2008 Session

## PEDRO AND GRISELDA VALADEZ, Individuals and as parents and next Friends of FATIMA VALADEZ, a minor v. NEWSTART, LLC, ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. CT-007286-04     Donna M. Fields, Judge

No. W2007-01550-COA-R3-CV - Filed November 7, 2008

In this appeal we are asked to reverse the trial court's grants of summary judgment to Appellees and adopt a loss of chance theory of recovery, thus allowing Appellants to recover for Appellees' alleged failure to timely notify them that their unborn child was afflicted with spina bifida such that they could participate in a clinical trial. Because our supreme court has expressly stated that Tennessee does not recognize a cause of action for loss of chance, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Tim Edwards, Memphis, TN, for Appellants

Darrell E. Baker, Jr., Peter B. Winterburn, Memphis, TN, for Appellees Newstart, LLC, and Carl Pean, M.D.

Jerry E. Mitchell, Justin E. Mitchell, Memphis, TN, for Appellee Ericka Lee Gunn-Hill, M.D.

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

In early 2003 the National Institute of Child Health and Human Development (NICHD) commenced a study to compare two approaches to treating babies with spina bifida, a condition where a baby's spine remains exposed in the mother's uterus. The study, known as the Management of Myelomengocele Study (MOMS), was limited to three clinical centers, including Vanderbilt University. Persons interested in participating in the study were sent an information packet and were required to consent to both an evaluation of their medical records and consultation with their doctor, if necessary. After eligibility was confirmed, participants were assigned to one of the three clinical centers, where a final screening was performed.[1] Upon enrollment in the study, women were assigned to one of two groups: the intrauterine surgical group (prenatal surgery group), in which surgery was performed on the fetus's spine while in the uterus, or the standard care group (postnatal surgery group), in which surgery was performed after birth, typically within 48 hours. Assignment to either group was randomly "made by a central computer system" and [n]either the MOMS Center staff nor the woman [was] able to choose which group she [was] assigned to." Thus, each participant "had a 50-50 of either being in the [intrauterine surgery] study group or in the [postnatal surgery] group."

Griselda Valadez ("Appellant" or "Ms. Valadez"), was a patient of Dr. Carl Pean ("Appellee"), for prenatal care. However, during Ms. Valadez's pregnancy Dr. Pean was called to serve on active military duty, and his patients were treated by Dr. Ericka Gunn-Hill. In January 2004, at approximately twenty-one weeks pregnant, Ms. Valadez underwent an ultrasound examination, administered by the Flinn Clinic. Appellants allege that the results of the examination, which showed Ms. Valadez's unborn child was afflicted with spina bifida, were promptly relayed to Appellees; however, Appellees failed to notify Appellants of the results until March 2004.

On December 30, 2004, Pedro and Griselda Valadez (collectively, "Appellants") filed a Complaint for Medical Malpractice and for Breach of Contract against Newstart, LLC, Carl Pean, M.D., and Ericka Gunn-Hill, M.D. (collectively, "Appellees").[2] Appellants claimed that Appellees were notified by the Flinn Clinic of the results of the ultrasound, but failed to timely notify Appellants. This failure, Appellants claimed, prevented Ms. Valadez from qualifying for the MOMS study, whereby she could have potentially received the intrauterine surgery, as women must qualify for the study by the twenty-fifth week of pregnancy.

---

[1] According to the MOMS website, "[t]he [final screening] is quite extensive and includes: [a] complete obstetrical ultrasound (sonogram)[;] [a]n MRI of the fetus's head [;] [a] physical examination of the mother and clearance for surgery by an anesthesiologist and an obstetrician [;] [a] social work evaluation [;] [t]eaching about spina bifida and the medical problems associated with this condition [;] [t]eaching about what the prenatal surgery will involve, what to expect after surgery and what type of care will be needed between the prenatal surgery and delivery [;] [a] review of medications which may be necessary before, during and after the prenatal surgery [; and a] thorough review of the risks and benefits of participating in the study. If the evaluation confirms that a woman is eligible and she chooses to participate in the study, she will be asked to sign an informed consent form and the father will complete a brief psychosocial questionnaire." MOMS, http://www.spinabifidamoms.com/english/overview.html (last visited Sept. 18, 2008).

[2] Appellants' original Complaint named Newstart, LLC, Carl Pean, M.D., John Doe, M.D., and Jane Roe, M.D. However, Ericka Lee Gunn-Hill, M.D. was specifically named in an Amended Complaint, filed April 28, 2005.

On January 11, 2007, Appellees filed motions for summary judgment claiming that Appellants would "not be able to establish their claims to a reasonable degree of medical certainty in that there is <u>no more than a 50% chance</u> that Griselda Valadez would have been included in the fetal surgery side of a randomized study[.]" The trial court granted Appellees' Motions in a Memorandum Opinion and Order, filed July 3, 2007, holding that "this is a 'lost opportunity' case within the meaning of <u>Kilpatrick v. Bryant</u>, 868 S.W.2d 594 (Tenn. 1993)" and thus the "case must be dismissed."

## II.  ISSUE PRESENTED

Appellants have timely filed their notice of appeal and present the following issue for review:

1.    Whether Tennessee should adopt a loss of chance theory of recovery.

For the following reasons, we affirm the decision of the circuit court.

## III.  STANDARD OF REVIEW

In the instant case, we are asked to review the trial court's grant of summary judgment to a defendant.  Thus, we are bound by the following standard of review:

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Tenn. R. Civ. P. 56.04.  Ruling on a motion for summary judgment does not involve disputed issues of fact, but only questions of law. *Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001).  Thus, our standard for reviewing a grant of summary judgment is *de novo* with no presumption of correctness as to the trial court's findings.  *See Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).  The evidence must be viewed "in the light most favorable to the nonmoving party," and all reasonable inferences must be drawn in the non-moving party's favor. *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000).

## IV.  DISCUSSION

On appeal, Appellants argue that this Court should reverse the trial court's grant of summary judgment to Appellees and adopt the "loss of chance" doctrine in this medical malpractice case.  Our Supreme Court dealt with the "loss of chance" doctrine in *Kilpatrick v. Bryant*, 868 S.W.2d 594 (Tenn. 1993).  In *Kilpatrick*, a doctor who was sued for failing to detect breast cancer was granted summary judgment after alleging, in his motion, that the plaintiffs failed to establish the necessary elements of a medical malpractice action as outlined in Tennessee Code Annotated section 29-26-115:

> (a) In a malpractice action, the claimant shall have the burden of
> proving by evidence . . . :

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) *As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.*

Tenn. Code Ann. § 29-26-115 (Supp. 2007) (emphasis added). Our Supreme Court noted that our state's medical malpractice "statute codifies the common law elements of negligence - duty, breach of duty, causation, proximate cause, and damages," ***Kilpatrick***, 868 S.W.2d at 598 (citing *Cardwell v. Bechtol*, 724 S.W.2d 739, 753 (Tenn. 1987); *Dolan v. Cunningham*, 648 S.W.2d 652, 654 (Tenn. Ct. App. 1982)) and that "no claim for negligence can succeed in the absence of any one of these elements." ***Id.*** (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). It further stated that "[c]ases involving the 'loss of chance' theory of recovery necessarily focus on the elements of causation and proximate cause." ***Id.*** (citing *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397 (Tex. 1993)). The Court then explained that causation is a two-step process. First, courts must determine whether causation (cause in fact) has been established–whether "'the event would not have occurred but for the conduct.'" ***Id.*** (citing *McKellips v. Saint Francis Hosp.*, 741 P.2d 467, 470 (quoting Prosser and Keeton, *The Law of Torts* 266 (5th ed. 1984))). If cause in fact is established, courts must then determine proximate cause–whether the cause is sufficiently related to the result to impose liability. ***Id.***

"The critical issue in this appeal, as in all loss of chance cases, is whether the Plaintiffs have failed, as a matter of law, to establish the existence of causation, i.e., that the purported medical malpractice actually caused the harm complained of." ***Id.*** (citing *McKellips*, 741 P.2d at 470-71). "This question dominates because the rule requiring causation be proven by a preponderance of the evidence dictates that Plaintiffs demonstrate the negligence *more likely than not* caused the injury." ***Id.*** at 598-99 (citing *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861 (Tenn. 1985)).

In deciding whether to recognize the "loss of chance" cause of action in Tennessee, our Supreme Court considered the doctrine's history. The "loss of chance" doctrine emerged in *Hicks v. United States*, 368 F.2d 626 (4th Cir. 1966), where the Fourth Circuit, in dicta, stated:

When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the

chances that he has put beyond the possibility of realization. If there is any substantial possibility of survival and the defendant has destroyed it, he is answerable.

*Kilpatrick*, 868 S.W.2d at 599 (quoting *Hicks*, 368 F.2d at 632). Relying on that language, some courts began adopting the "loss of chance" doctrine, as discussed below. *Id.* However, in *Hurley v. United States*, 923 F.2d 1091, 1093 (4th Cir. 1991), the Fourth Circuit reviewed *Hicks* and stated that the "dicta . . . [has] precipitated misunderstanding throughout the courts." *Id.* "The court in *Hurley* held that *Hicks* was not intended to change traditional notions of causation in medical malpractice cases, and rejected the loss of chance doctrine as a viable cause of action - thereby negating the widely held view of *Hicks*." *Id.* (citing *Hurley*, 923 F.2d at 1095, 1099). Instead, the Fourth Circuit "reinstated the traditional standard for proving causation which requires a showing of probability of survival or recovery of greater than 50 percent absent the defendant's negligence." *Id.*

The jurisdictions that have considered whether to adopt the "loss of chance" doctrine have typically chosen one of three approaches: (1) pure loss of chance, (2) loss of a substantial chance, and (3) the traditional approach. *Kilpatrick*, 868 S.W.2d at 600 (citation omitted). Under the pure loss of chance theory, a patient may recover if the defendant deprives him or her of *any* possibility of a better result. *Id.* "Thus, . . . a patient who faced a 95 percent chance of dying even with appropriate medical care would still have a cause of action against the physician who negligently deprived him of the 5 percent chance of survival." *Id.* At least fourteen jurisdictions have adopted the pure loss of chance approach.[3]

Between the pure loss of chance and the traditional approach lies the loss of substantial chance approach. Under this approach, "the [defendant's] negligence [must] be shown to have reduced a 'substantial chance' or 'substantial possibility' or 'appreciable chance' of a favorable end result given appropriate medical treatment." *Id.* "This approach is apparently designed to prohibit claims where the plaintiff does not have a realistic basis for a favorable outcome even absent the defendant's negligence[,]" *Id.* at 600-01, while, at the same time, preventing a health care provider from avoiding liability for negligence "simply by saying that the patient would have died anyway, when that patient had a reasonable chance to live." *Kilpatrick*, 868 S.W.2d at 600 (quoting *Perez v. Las Vegas Med. Ctr.*, 805 P.2d 589, 593 (Nev. 1991)). Under this approach, the "impaired or destroyed opportunity" itself, is considered the injury. *Id.* at 601 (citing *Falcon v. Mem'l Hosp.*, 462

---

[3] Although it is sometimes difficult to classify a jurisdiction's adoption of the "loss of chance" theory as pure loss of chance or loss of a substantial chance theory, it seems that fourteen states have adopted the former. *See Thompson v. Sun City Cmty. Hosp.*, 688 P.2d 605, 616 (Ariz. 1984); *James v. United* States, 483 F. Supp. 581, 586 (N.D. Cal. 1980) (applying California law); *Richmond County Hosp. Auth. v. Dickerson*, 356 S.E.2d 548, 550 (Ga. Ct. App. 1987); *DeBurkarte v. Louvar*, 393 N.W.2d 131, 137 (Iowa 1986); *Delaney v. Cade*, 873 P.2d 175, 211 (Kan. 1994); *Wollen v. DePaul Health Ctr.*, 828 S.W.2d 681, 685 (Mo. 1992) (en banc); *Aasheim v. Humberger*, 695 P.2d 824, 828 (Mont. 1985); *Scafidi v. Seiler*, 574 S.2d 398, 408 (N.J. 1990); *Roberts v. Ohio Permanente Med. Group, Inc.*, 668 N.E.2d 480, 488 (Ohio 1996) (*overruling Cooper v. Sisters of Charity Cincinnati, Inc.*, 272 N.E.2d 97 (Ohio 1971)); *Hamil v. Bashline*, 392 A.2d 1280, 1286 (Pa. 1978); *Voegeli v. Lewis*, 568 F.2d 89, 94 (8th Cir. 1997) (applying South Dakota law); *Herskovits v. Group Health Coop. of Puget Sound*, 664 P.2d 474, 479 (Wash. 1983); *Thornton v. CAMC, Etc.*, 305 S.E.2d 316, 324-25 (W. Va. 1983); *Ehlinger v. Sipes*, 454 N.W.2d 754, 763 (Wis. 1990).

N.W.2d 44, 53-54 (Mich. 1990), *superseded by statute*, Mich. Comp. Laws Ann. § 600.2912a (West 2000), *as recognized in Blair v. Hutzel Hosp.*, 552 N.W.2d 507 (Mich. Ct. App. 1990)).  Thus, the plaintiff must establish by a preponderance, only that the defendant's negligence was the cause in fact of the impaired opportunity, not that it was the cause in fact of the harmful medical result.  *Id.* At least five jurisdictions have adopted the loss of substantial chance approach.[4]

Other jurisdictions which have considered whether to adopt the "loss of chance" doctrine have instead adopted the traditional approach.  Under this approach, "recovery is disallowed unless it can be shown that the plaintiff would not have suffered the physical harm but for the defendant's negligence, i.e., that it is more probable than not (greater than 50 percent) that but for the negligence of the defendant the plaintiff would have recovered or survived."  *Id.* at 602 (citing *Falcon*, 462 N.W.2d at 47 (Riley, C.J., dissenting)). At least nineteen jurisdictions, including Tennessee, have adopted the traditional approach, refusing to recognize the "loss of chance" doctrine.[5]  In adopting the traditional approach and refusing to adopt the "loss of chance" doctrine, our Supreme Court stated:

> [P]roof of causation equating to a "possibility," a "might have," "may have," "could have," is not sufficient, as a matter of law, to establish the required nexus between the plaintiff's injury and the defendant's tortious conduct by a preponderance of the evidence in a medical malpractice case.  Causation in fact is a matter of probability, not possibility, and in a medical malpractice case, such must be shown to a reasonable degree of medical certainty.

*Kilpatrick*, 868 S.W.2d at 602 (citing *White v. Methodist Hosp. S.*, 844 S.W.2d 642, 648-49 (Tenn. Ct. App. 1992)).  Furthermore, our Supreme Court held:

> [W]e are persuaded that the loss of chance theory of recovery is fundamentally at odds with the requisite degree of medical certitude necessary to establish a casual like between the injury of a patient and

---

[4] *See Daniels v. Hadley Mem'l* Hosp., 566 F.2d 749, 757-58 (D.C. Cir. 1977); *McBride v. United States*, 462 F.2d 71 (9th Cir. 1972) (applying Hawaii law) ("[T]he absence of positive certainty [that the treatment would have successfully prevented the plaintiff's injury] should not bar recovery if negligent failure to provide treatment deprives a patient of a significant improvement in his chances for recovery."); *Perez v. Las Vegas Med. Ctr.*, 805 P.2d 589, 592 (Nev. 1991); *Kallenburg v. Beth Israel Hosp.*, 45 A.D.2d 177, 179-80 (N.Y. App. Div. 1974) (per curiam); *McKellips v. Saint Francis Hosp.*, 741 P.2d 467, 475 (Okla. 1987).

[5] *See* Mich. Comp. Laws Ann. § 600.2912a (West 2000); *Finn v. Phillips*, No. COA 01-1317, 2002 WL 31133192, at *2 (Ark. Ct. App. Sept. 25, 2002); *Grody v. Tulin*, 365 A.2d 1076, 1079-80 (Conn. 1976); *U.S. v. Cumberbatch*, 647 A.2d 1098, 1099 (Del. 1994); *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1021 (Fla. 1984); *Watson v. Med. Emergency Sev.*, 532 N.E.2d 1191, 1196 n.2 (Ind. Ct. App. 1989); *Walden v. Jones*, 439 S.W.2d 571, 576 (Ky. 1968); *Philips v. Eastern Maine Med. Ctr.*, 565 A.2d 306, 308 (Me. 1989); *Fennell v. S. Maryland Hosp. Ctr., Inc.*, 580 A.2d 206, 215 (Md. 1990); *Fabio v. Bellomo*, 504 N.W.2d 758, 762 (Minn. 1993); *Ladner v. Campbell*, 515 So. 2d 882, 888-89 (Miss. 1987); *Pillsbury-Flood v. Portsmouth Hosp.*, 512 A.2d 1126, 1130 (N.H. 1986); *Alfonso v. Lund*, 783 F.2d 958, 964-65 (10th Cir. 1986) (stating that "we believe that New Mexico would not apply the 'lost chance' theory . . . [as] New Mexico courts have remained firm in requiring that proximate cause be shown as a probability."); *Horn v. Nat'l Hosp. Ass'n*, 131 P.2d 445 (Or. 1944); *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 407 (Tex. 1993); *Jones v. Owings*, 465 S.W.2d 371, 374 (S.C. 1995); *Blondel v. Hays*, 403 S.E.2d 340, 344-45 (Va. 1991).

the tortious conduct of a physician. . . . [A] plaintiff in Tennessee must prove that the physician's act or omission more likely than not was the cause in fact of the harm. *Lindsey* [*v. Miami Dev. Corp.*], [6]89 S.W.2d [856,] 861 [(Tenn. 1985)]. This requirement necessarily implies that the plaintiff must have had a better than even chance of surviving or recovering from the underlying condition absent the physician's negligence. [Tenn. Code Ann. section] 29-26-115(a)(3) plainly requires that the plaintiff suffer injury "which would not otherwise have occurred." This statutory language is simply another way of expressing the requirement that the injury would not have occurred but for the defendant's negligence, our traditional test for cause in fact. . . . [W]e hold that a plaintiff who probably, i.e., more likely than not, would have suffered the same harm had proper medical treatment been rendered, is entitled to no recovery for the increase in the risk of harm or the loss of a chance of obtaining a more favorable medical result. . . . We decline to relax traditional cause in fact requirements and recognize a new cause of action for loss of chance.

*Id.* at 602-03.[6]

---

[6] The *Kilpatrick* court also noted Michigan Supreme Court Chief Justice Riley's dissent in *Falcon*, 462 N.W.2d at 61, 64-68, wherein she stated:

> The 'lost chance of survival' theory urged by plaintiff represents not only a redefinition of the threshold of proof for causation, but a fundamental redefinition of causation in tort law.
>
> . . . .
>
> Relaxing the causation requirement might correct a perceived unfairness to some plaintiffs who could prove the possibility that the medical malpractice caused an injury but could not prove the probability of causation, but at the same time could create an injustice. Health care providers could find themselves defending cases simply because a patient fails to improve or where serious disease processes are not arrested because another course of action could possibly bring a better result. No other professional malpractice defendant carries this burden of liability without the requirement that plaintiffs prove the alleged negligence probably rather than possibly caused the injury. We cannot approve the substitution of such an obvious inequity for a perceived one.
>
> The lost chance of survival theory does more than merely lower the threshold of proof of causation; it fundamentally alters the meaning of causation.
>
> The most fundamental premise upon which liability for a negligent act may be based is cause in fact. ([c]itation omitted)[.] An act or omission is not regarded as a cause of an event if the particular event would have occurred without it. ([c]itation omitted)[.] If the defendant's acts did not actually cause the plaintiff's injury, then there is no rational justification for requiring the defendant to bear the cost of the plaintiff's damages.
>
> . . . .

(continued...)

"Once the Tennessee Supreme Court has addressed an issue, its decision regarding that issue is binding on the lower courts." ***Davis v. Davis***, No. M2003-02312-COA-R3-CV, 2004 WL 2296507, at *6 (Tenn. Ct. App. Oct. 12, 2004) (citing *State v. Irick*, 906 S.W.2d 440, 443 (Tenn. 1995); *Payne v. Johnson*, 2 Tenn. Cas. (Shannon) 542, 543 (1877)). "The Court of Appeals has no authority to overrule or modify [the] Supreme Court's opinions." ***Bloodworth v. Stuart***, 428 S.W.2d 786, 789 (Tenn. 1968) (citing *City of Memphis v. Overton*, 392 S.W.2d 86, 97 (Tenn. Ct. App. 1964); *Levitan v. Banniza*, 236 S.W.2d 90, 95 (Tenn. Ct. App. 1950)); *see also **Barger v. Brock***, 535 S.W.2d 336, 340-41 (Tenn. 1976). Accordingly, because Appellants cannot show a greater than fifty percent chance of receiving the intrauterine surgery even absent Appellees' negligence, we must affirm the trial court's decision to grant Appellees' motions for summary judgment.

## V.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to Appellants, Pedro and Griselda Valadez, and their surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.

---

[6](...continued)

> I believe it is unwise to impose liability on members of the medical profession in such difficult circumstances as those now before this Court. Rather than deterring undesirable conduct, the rule imposed only penalizes the medical profession for inevitable unfavorable results. The lost chance of survival theory presumes to know the unknowable.

*Kilpatrick*, 868 S.W.2d at 603 (quoting *Falcon,* 462 N.W.2d at 61, 64-68), *superseded by statute*, Mich. Comp. Laws Ann. § 600.2912a (West 2000), *as recognized in Blair v. Hutzel Hosp.*, 552 N.W.2d 507 (Mich. Ct. App. 1990)).