**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 29 2014, 10:13 am

*[signature]*

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**ROBERT L. NEALE**
New Castle, Indiana

ATTORNEY FOR APPELLEE:

**CAROL A. DILLON**
Bleeke Dillon Crandall
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT L. NEALE, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.  52A05-1307-CT-361 |
| | ) | |
| CORRECTIONAL MEDICAL | ) | |
| SERVICES, INC., et al, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE MIAMI CIRCUIT COURT
The Honorable Timothy P. Spahr, Judge
Cause No. 52C01-1106-CT-215

**January 29, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-plaintiff Robert L. Neale, an inmate at the Miami Correctional Facility, broke several fingers while punching his cellmate in the face. Neale sued the appellee-defendants Correctional Medical Services Company (now known as Corizon), Linda Frye, and Nicole Pax (collectively, "the defendants"), who were employees at the Miami Correctional Facility, alleging medical malpractice and general negligence in the treatment of his injuries.

The trial court granted summary judgment in the defendants' favor when their designated medical evidence established that they acted reasonably and within the applicable standard of care. Neale put forth no expert testimony to the contrary and the trial court struck various portions of his affidavit that amounted to inadmissible hearsay evidence and conclusions. Nonetheless, Neale contends that genuine issues of material fact remain as to whether the defendants committed medical malpractice.

We find that the trial court properly struck portions of Neale's affidavit and that summary judgment was properly entered for the defendants.

## FACTS

Neale was incarcerated at the Miami Correctional Facility, which had contracted with Corizon to provide medical care for its prisoners. On November 23, 2009, Neale and his cellmate got into a fight and Neale hit his cellmate in the face. As a result, Neale fractured the third and fourth digits of his right hand. Neale's hand was x-rayed that day and examined by Dr. Anna Lambertson. Dr. Lambertson immediately requested an

2

orthopedic consultation, prescribed Vicodin for Neale's pain, and placed Neale's fingers in a splint.

Although Nicole Pax, an administrative assistant in the medical department, scheduled an appointment for Neale with the Orthopedic Clinic at Wishard Hospital on December 8, 2009, a scheduling error occurred so she made arrangements for Neale to be examined at Dukes Memorial Hospital (Dukes) two days later. However, Pax did not know that Neale had a court hearing that same day. As a result, both appointments were inadvertently cancelled in light of miscommunication by prison officials and staff. Neale also alleged that he had informed Linda Frye, the health services administrator at the Miami Correctional Facility and an employee of Corizon, about his injured hand. Neale alleged that Frye ignored all of his letters and requests for treatment.

Dr. Lambertson subsequently examined Neale on December 17, 2009, and renewed his Vicodin prescription for seven days. Surgery was performed the next day and Neale returned for a follow up appointment at Dukes in early February, 2010. Pursuant to Dr. Lambertson's orders, Neale began physical therapy in March 2010, went to several appointments, and completed therapy on April 30, 2010.

On June 15, 2011, Neale filed a complaint against the defendants, alleging that while he was confined at the Miami Correctional Facility, Corizon, Frye, and Pax, were negligent for failing to treat Neale's broken hand in a timely, adequate, and effective manner.

3

On April 8, 2013, the defendants filed a motion for summary judgment, claiming that they were entitled to judgment as a matter of law because Neale could not establish that the defendants breached the appropriate standard of care or that any action or inaction on their part resulted in physical harm to Neale. The defendants submitted the affidavits of Frye, Pax, and Dr. Mandaret in support of their motion for summary judgment, alleging that no standard of care toward Neale had been breached.

Frye averred in her affidavit that she is the Health Services Administrator at the Miami Correctional Facility and is the liaison between the Superintendent and the medical department. Frye rarely treats offenders and never rendered medical care to Neale. She also makes no treatment decisions, and had no control over Dr. Lambertson or her staff. She also did not cancel any of Neale's appointments with any of the providers outside the prison.

Pax set forth in her affidavit that she is the administrative assistant at the Miami Correctional Facility, does not treat offenders or provide any sort of medical assessment, and has nothing to do with prescribing medication for the prisoners. The medical staff has no control over when any outside provider or a hospital schedules an appointment for an offender. Pax acknowledged that there had been a communication problem regarding Neale's court date and the hospital appointment in December 2009. Pax averred that she did not cancel any of Neale's appointments, that Dukes had rescheduled the last appointment, and that Neale missed his first two appointments because the correctional officers had escorted him to the wrong clinic at Wishard Hospital.

4

Dr. Mandaret averred in his affidavit that he had reviewed Neale's medical records and concluded that the medical care that the nursing and physician staff at the Miami Correctional Facility rendered to Neale was "reasonable, appropriate, and within the applicable standard of care for the prison setting." Appellant's App. p. 103. Dr. Mandaret was also of the opinion that Neale's treatment at the Miami Correctional Facility did not cause or contribute to his injury. To the contrary, Dr. Mandaret concluded that any deformity, restrictions, or pain that Neale had with his hand was the result of the fracture itself, and not by the medical treatment he received.

In response, Neale presented his own affidavit, attempting to establish that the defendants were negligent. Thereafter, the defendants moved to strike several portions of Neale's affidavit as inadmissible. More particularly, the trial court struck portions of the affidavit that contradicted the medical records that were produced and amounted to hearsay. The trial court also observed that some of the statements required medical testimony, and that Neale lacked personal knowledge about some of the issues that he set forth in his affidavit.

The trial court granted the defendants' motion for summary judgment and Neale appeals.

## DISCUSSION AND DECISION

### I.  Standard of Review

When reviewing a grant or denial of summary judgment, our standard of review is the same as that of the trial court.  Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009).  We construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a material issue against the moving party.  Id.  The party appealing a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous.  Knoebel v. Clark Cnty. Superior Court No. 1, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009).

### II.  Neale's Contentions

Neale asserts that the trial court erred in granting the defendants' motion for summary judgment because Corizon's staff erred in making various appointments for the treatment of his hand, and that Frye had ignored all of his letters and requests for treatment.  Thus, Neale claims that his "bones healed improperly as mistakes were made in scheduling his medical treatment and restraints were not replaced on his hand during the healing process."  Appellant's Br. p. 8.

The plaintiff in a medical negligence case has the burden to prove (1) the appropriate standard of medical care applicable to the medical provider; (2) the medical

6

provider's care fell below that standard of care; and (3) the medical provider's failure to meet the standard of care was the proximate cause of the plaintiff's injuries. Watson v. Med. Emergency Serv., 532 N.E.2d 1191, 1193 (Ind. Ct. App. 1989). When a physician presents an opinion that the applicable standard of care was not breached, as Dr. Marandet has done in this case, a patient asserting malpractice must "present expert testimony establishing the standard of care and the [defendant's] conduct fell below the standard of care." Marquis v. Battersby, 443 N.E.2d 1202, 1203 (Ind. Ct. App. 1982). However, expert testimony is required only when the issue of care is beyond the realm of lay persons. Stumph v. Foster 524 N.E.2d 812, 815 (Ind. Ct. App. 1988). A plaintiff is not required to present expert testimony in cases of medical malpractice based on negligence in order to overcome summary judgment when deviation from the standard of care is a matter commonly known to lay persons. Chaffins v. Kauffman, 995 N.E.2d 707, 713 (Ind. Ct. App. 2013).

As discussed above, the defendants' affidavits set forth the course of Neale's medical care and explained why Neale's scheduled appointments were missed with the orthopedic doctor. And Dr. Marandet concluded that the medical care that Neale received was within the applicable standard of care for the prison setting and did not result in any harm to Neale. Id. at 103. In other words, the problems that Neale currently alleges to have with his hand are the result of the fractures themselves, rather than the result of the medical care that he received from the defendants. Put another way, the defendants' designated evidence established that there was no causal connection between

7

the medical care that Neale received at the Miami Correctional Facility and his alleged injuries. Id.

In her affidavit, Pax averred that she did not make an appointment for Neale with the wrong physician. Id. at 98. Although additional mistakes were made with regard to various appointments for Neale, Pax explained that she never cancelled the appointments and has no control as to when an outside hospital or provider will schedule a prisoner for an appointment. Id. In short, Pax established that she had no direct involvement in treating Neale or prescribing medication for him because she is not a medical provider.

Regarding Frye, it was established that she, as the Health Services Administrator, did not supervise or direct the nursing staff or the physicians with regard to Neale's care. Id. at 93. She was also not personally involved in Neale's care because her role at the prison is purely administrative. Id. at 94. Moreover, there was no evidence that Frye employed, controlled, directed, or oversaw the individuals who actually treated Neale.

The only direct allegation that Neale asserts against Frye is that he wrote her letters to which she did not respond. However, Frye's affidavit indicated that she had no recollection of receiving any letters from Neale, and if she did, it is her policy to respond to each letter the same day. Id. at 95.

In our view, the issue as to whether Corizon and its nurses and physicians breached the applicable standard of care by failing to properly treat Neale's fractured fingers is a medical one for which expert testimony is required. See Topp v. Leffers, 838 N.E.2d 1027, 1032 (Ind. Ct. App. 2005) (observing that expert medical testimony was

8

required to prove causation in a personal injury action arising from an automobile accident where a motorist complained that pre-existing injuries were aggravated by the accident, and the discerning causal connection involved a complicated medical question in light of the pre-existing injuries).

As noted above, although Neale submitted his own affidavit in opposition to the defendants' motion for summary judgment, the trial court struck portions of it on the grounds that it contained inadmissible hearsay evidence, contradicted the medical records that were produced, and several of the statements that Neale made demonstrated his lack of personal knowledge about some of the issues. Appellant's App. p. 105-08.

In conclusion, the defendants presented expert medical testimony that they were not negligent and did not breach the standard of care in treating Neale. Neale failed to present designated medical evidence to the contrary. Thus, we conclude that the trial court properly entered summary judgment for the defendants.

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.